STATE OF CONNECTICUT *v.* ERIC N. PERSON
(13868)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued May 3—decision released July 17, 1990

*Hubert J. Santos,* for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom were *Mary Elizabeth Baran,* assistant state's attorney, and, on the brief, *Walter D. Flanagan,* state's attorney, and *Ted Diament,* law student intern, for the appellee (state).

HULL, J. The defendant, Eric N. Person, was charged with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[1] sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (D)[2] and two counts of risk of injury to a child in violation of General Statutes § 53-21.[3] Fol-

---

[1] General Statutes § 53a-71 provides in pertinent part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[2] General Statutes § 53a-73a provides in pertinent part: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is . . . (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare . . . ."

[3] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

lowing a jury trial, he was convicted of sexual assault in the second degree and one count of risk of injury to a child and acquitted of the other two charges. The trial court thereupon sentenced the defendant to concurrent ten year terms of imprisonment on the two counts. The Appellate Court affirmed the judgment of conviction and determined, inter alia, that: (1) the defendant was not unfairly prejudiced when the trial court permitted a defense witness to invoke his fifth amendment privilege against self-incrimination in the presence of the jury; and (2) it was harmless error for the trial court to permit recross-examination of the witness regarding his prior fifth amendment invocation for the purposes of impeaching the witness' credibility. *State* v. *Person,* 20 Conn. App. 115, 123, 564 A.2d 626 (1989). This court granted the defendant's petition for certification to appeal from the decision of the Appellate Court, limited to the following issues: "(1) May the state, in a criminal prosecution, require a defense witness to invoke the privilege against self-incrimination in open court, and may it use such invocation and subsequent waiver as a basis for impeaching the witness and for adverse comment in its summation?" and "(2) If the trial court's ruling to permit such conduct was erroneous, was the Appellate Court correct in concluding that the error was harmless?" *State* v. *Person,* 213 Conn. 811, 568 A.2d 796 (1990). We conclude that the trial court should not have permitted the conduct but that no prejudice resulted. Accordingly, we affirm the decision of the Appellate Court.

Although the facts are set forth in the decision of the Appellate Court; *State* v. *Person,* supra, 20 Conn. App. 115; we discuss those facts pertinent to the issues. On March 25, 1987, the defendant was arrested and charged with sexual assault in the second degree and risk of injury to a child in connection with sexual acts allegedly

perpetrated against the younger of his two daughters. In addition, he was charged with sexual assault in the fourth degree and risk of injury to a child in connection with alleged sexual conduct involving his older daughter. At trial, the younger victim (hereinafter the victim) testified that following her parents' divorce she would regularly visit the defendant on the weekends at his apartment in Danbury. She stated that during these weekend visits, the defendant would take her into his bedroom and engage in various sexual acts with her. On one occasion he forced the victim to engage in sexual activity in his car. The victim described these acts in graphic detail and used anatomically correct dolls to demonstrate the sexual activity.

The victim's physician, a pediatrician, provided constancy of accusation testimony. Further, the physician testified that in her opinion the physical condition of the victim's genital area was consistent with the victim's allegations of sexual assault. Constancy of accusation testimony was also provided by the victim's mother and two police officers who had investigated the matter.

Various defense witnesses testified that while present at the defendant's apartment in Danbury, they had observed no unusual behavior between the defendant and the victim. Other witnesses stated that the defendant appeared to be a good father who had a positive relationship with the victim. The defendant testified in his own defense and denied the victim's accusations.

The defendant challenges the Appellate Court's conclusions regarding three incidents of alleged prosecutorial misconduct. We consider first the challenged prosecutorial conduct that occurred during the presentation of the defendant's case and second the challenged conduct that occurred during the state's closing argument.

## I

The defendant asserts that he was denied a fair trial
when a defense witness was required to invoke his priv-
ilege against self-incrimination in the presence of the
jury. Immediately following the defendant's testimony,
Dean Mercier was called to testify on behalf of the
defense. Mercier stated that he was a good friend of
the defendant and that he had frequently visited the
defendant's apartment during the time the sexual
assaults allegedly had occurred. Mercier further testi-
fied that he had never observed any unusual behavior
between the defendant and the victim and that in his
opinion, the defendant and the victim had a good rela-
tionship. He did state, however, that he had only had
occasion to go into the defendant's bedroom while the
defendant and the victim were napping.

On cross-examination, the state inquired as to Mer-
cier's ability to perceive events while present at the
defendant's apartment. In response Mercier stated that
his perception was "very sharp." The state then posed
the following question: "Well, isn't it true, sir, that with
regard to your powers of perception while you were
at the defendant's apartment during the dates in ques-
tion, that you were frequently smoking marihuana—?"
The defendant objected to this question, and the court
excused the jury.

Outside the presence of the jury, the state argued
that the inquiry was relevant to the witness' ability to
observe and perceive events. The defendant argued
that the attempted introduction of the witness' mari-
huana use was inflammatory and prejudicial to the
defendant and thereupon moved for a mistrial. The
court overruled the objection and denied the motion
for a mistrial. The court stated that although the ques-
tion would have been improper if asked of the defend-

ant, it was permissible to inquire about marihuana use of a witness, because the question "has a bearing upon the ability of a person to remember and relate."

Mercier expressed concern that his answer to the pending question might incriminate him and asked for an opportunity to consult with his attorney. He left the witness stand. When, shortly thereafter, he resumed the witness stand, he stated that he had been unable to contact his attorney, but that he would answer the question anyway. The court, however, advised Mercier to refrain from further testimony until after he had obtained proper legal advice. The witness was then excused.

Mercier was later recalled for cross-examination. Outside the presence of the jury, he informed the court that he had been advised not to answer any questions relating to marihuana use. The defendant requested that Mercier's invocation of his fifth amendment privilege occur without the jury present, reasoning that its inflammatory and prejudicial nature outweighed its probative value. The court denied the defendant's request.

Following the jury's return, the state proceeded to engage in a litany of questions regarding Mercier's use of marihuana and alcohol. The defendant adamantly objected throughout the cross-examination, but the court overruled the majority of the objections. Mercier asserted his fifth amendment privilege against self-incrimination in response to ten questions.

The defendant also contends that he was denied his right to a fair trial when the state sought to impeach Mercier during recross-examination based upon his prior invocation of the fifth amendment privilege. Subsequent to Mercier's initial testimony, the defendant recalled Mercier who stated that he was waiving his fifth amendment privilege against self-incrimination.

Mercier testified that he had never smoked marihuana at the defendant's apartment while the victim was there.

During recross-examination, the state inquired whether Mercier's decision to waive his fifth amendment privilege was a result of newfound knowledge that he could not be prosecuted for marihuana use revealed at the trial. Mercier stated that such knowledge had no bearing on his decision and that his prior invocation had primarily resulted from his confusion during cross-examination. The state asked numerous questions designed to imply that there was an inherent inconsistency between Mercier's prior invocation of his fifth amendment privilege and his present denial of marihuana use at the defendant's apartment. The defendant objected several times during the recross-examination, but again the court permitted the state's line of questioning.

At the outset, we note that although the defendant has framed these claims in terms of a denial of his due process right to a fair trial, the claims do not present constitutional issues. "Clearly, the defendant ' "has put a constitutional tag on . . . nonconstitutional evidentiary ruling[s]." *State* v. *Douglas,* 203 Conn. 445, 455, 525 A.2d 101 (1987) . . . .' *State* v. *Vilalastra,* [207 Conn. 35, 46, 540 A.2d 42 (1988)]; *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985); *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982)." *State* v. *Walker,* 215 Conn. 1, 5, 574 A.2d 188 (1990). First, with regard to a claim of error in requiring a defense witness to invoke his fifth amendment privilege against self-incrimination in the presence of the jury, the United States Supreme Court has held that "[n]o constitutional issues of any kind are presented" if such action is challenged, rather, it "is a claim of evidentiary trial error." *Namet* v. *United States,* 373 U.S. 179, 185, 83 S. Ct. 1151, 10 L. Ed. 2d 278 (1963). Second, an attempt to

impeach a witness during cross-examination through use of that witness' prior invocation of his fifth amendment privilege does not rise to a constitutional level even if harm results, because the harm involves another's exercise of a constitutional privilege rather than a constitutional privilege of the defendant. *United States* v. *Rubin,* 559 F.2d 975, 984 (5th Cir. 1977), vacated, 439 U.S. 810, 99 S. Ct. 67, 58 L. Ed. 2d 102 (1978), rev'd in part on other grounds, 591 F.2d 278 (5th Cir.), cert. denied, 444 U.S. 864, 100 S. Ct. 133, 62 L. Ed. 2d 87 (1979); *People* v. *Godsey,* 74 Ill. 2d 64, 73, 383 N.E.2d 988 (1978); see *United States* v. *Natale,* 526 F.2d 1160, 1171 (2d Cir. 1975), cert. denied, 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 193 (1976). Thus, these two claims of alleged prosecutorial misconduct are claims of evidentiary error reviewable under the standard of harmless error applicable to nonconstitutional errors. *State* v. *Burak,* 201 Conn. 517, 527, 518 A.2d 639 (1986); *State* v. *Vitale,* supra, 403.

The state concedes that requiring Mercier to invoke his fifth amendment privilege against self-incrimination in the presence of the jury and later attempting to impeach the witness with his prior assertion of the privilege constituted error. " ' "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). The defendant must show that it is more probable than not that the erroneous action of the court affected the result. Id.; *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976)." *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988).' *State* v. *Vilalastra,* [supra, 47]." *State* v. *Sierra,* 213 Conn. 422, 436–37, 568 A.2d 448 (1990). We conclude that the defendant has not met his burden.

Requiring a witness to assert the fifth amendment privilege against self-incrimination in the presence of

the jury presents two potential grounds for a finding of harmful error. " 'First, some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. . . . A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.' " *State* v. *Reddick,* 197 Conn. 115, 126, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986), quoting *Namet* v. *United States,* supra, 186–87.

Although the state's repeated questioning of Mercier with the design to elicit an invocation of the fifth amendment privilege in the presence of the jury was highly inappropriate as it served no legitimate purpose, such action did not constitute prosecutorial misconduct within the meaning of *Namet* v. *United States.* The record indicates that the state had prior knowledge that Mercier would invoke the privilege. Knowledge alone, however, does not substantiate the defendant's claim that the state consciously sought to build its entire case through use of Mercier's invocation by undermining the credibility of all defense witnesses. The state had made its objective clear when it requested that Mercier answer its question regarding marihuana use.[4] It sought to raise doubt as to Mercier's ability to observe and perceive events, an entirely permissible subject of cross-examination. *State* v. *Esposito,* 192 Conn. 166,

---

[4] Regarding its questions on marihuana use, the state claimed: "It's highly relevant. I claim that as highly relevant. He has testified as far as perceptions of what he observed, what he heard, what he saw, his observations. And, my point here is that he was not in complete control of his faculties, and I ask this question based on good faith, Your Honor. I do not ask it frivolously."

176, 471 A.2d 949 (1984), cert. denied sub nom. *Pierson* v. *Connecticut,* 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989); *State* v. *Ramirez,* 16 Conn. App. 284, 291, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988). Absent any further showing by the defendant, therefore, we cannot conclude that the state made "a conscious and flagrant attempt to build its case out of inferences arising from [Mercier's] use of the testimonial privilege." *Namet* v. *United States,* supra, 186.

"Nor is this a case where a witness' invocation of the fifth amendment lent critical weight to the state's case, as where the prosecutor uses the assertion of the privilege by an accomplice or someone linked to the defendant's crimes in order to build a case against the defendant." *State* v. *Reddick,* supra, 127; see also *United States* v. *Maloney,* 262 F.2d 535 (2d Cir. 1959) (two of the witnesses who invoked their fifth amendment privilege were critical witnesses in the sense that their silence acted as the sole source of potential corroboration for the state's version of the crime). Mercier was not a key witness in this regard or as a result of any special relationship with the defendant. Compare *State* v. *Williams,* 204 Conn. 523, 535, 529 A.2d 653 (1987) (record supported claim of serious prosecutorial misconduct where alleged improper conduct involved cross-examination of the defendant's principal witness, his wife); *People* v. *Godsey,* supra, 75 (reversible error where prosecutor referred to prior fifth amendment invocation of the defendant's wife).

The defendant contends that Mercier's assertion of his fifth amendment privilege added critical weight to the state's case, because through Mercier's silence the state intended to create the overall impression of a depraved, licentious environment at the defendant's apartment that would lead the jury to infer that the defendant was guilty of the crimes charged. Such an

inference of guilt is not reasonable in this case, however, because the specifications of the charges against the defendant were exclusively acts of a sexual nature. There were no allegations regarding a depraved or immoral environment and drug use was not at issue. Compare *People* v. *Godsey,* supra (likelihood that inference of witness' guilt transferred to defendant, because fifth amendment plea directed toward the same criminal involvement as that for which defendant was on trial). Without any logical nexus between the charges pending against the defendant and the subject matter about which Mercier was questioned, there was no reasonable basis from which the jury could draw an inference of the defendant's guilt. The defendant's claim of critical weight, therefore, fails in this respect as well.

Whether examination of a witness regarding his prior fifth amendment invocation for the purpose of impeachment requires reversal due to its prejudicial impact on the outcome of the trial involves the consideration of various factors, including: (1) the remoteness of the witness' testimony from the crime with which the defendant is charged; (2) the likelihood of juror confusion whereby the defendant is subconsciously linked to the witness' assertion of the privilege; and (3) the cumulative nature of the evidence, if any, provided by the witness. See *United States* v. *Rubin,* supra, 986–88; *United States* v. *Natale,* supra, 1171.

In this case, the substance of Mercier's testimony was remote from the central issue of the case, namely whether the sexual assaults had in fact occurred in the bedroom of the defendant's apartment as alleged by the victim. Whereas the victim provided direct evidence regarding the incidents in question, Mercier's testimony only provided circumstantial exculpatory evidence in that he stated that he had never observed any unusual behavior between the defendant and the victim and that in his opinion the defendant was a good father. Thus,

the jury could reasonably have believed the testimony of both Mercier and the victim and still have found the defendant guilty. Compare *United States* v. *Tomaiolo,* 249 F.2d 683 (2d Cir. 1957) (reversible error where state sought to impeach witness with prior fifth amendment assertion in response to questions regarding specific offense with which defendant was charged).

It is highly unlikely that the jury was confused by the recross-examination regarding Mercier's prior invocation of the fifth amendment to such an extent that it subconsciously linked the defendant to Mercier's assertion of the fifth amendment privilege. First, it was evident from the state's questions, which focused on perception, that the state was trying to impeach Mercier's credibility rather than trying to create an inference as to the defendant's guilt. Second, Mercier arguably dispelled any adverse inference that might have been drawn by his prior silence by proceeding to testify that he had not smoked marihuana at the defendant's apartment while the victim was present. Finally, Mercier responded to the state's questions regarding inconsistency by explaining that his assertion of the fifth amendment resulted from his lack of understanding and therefore was not inconsistent with his present testimony. Combined with the lack of any connection between marihuana use and the charges against the defendant, Mercier's rehabilitation made it unlikely that any reasonable juror would be confused and as a result subconsciously link the defendant to Mercier's invocation of the privilege.

Since other defense witnesses presented testimony similar to Mercier's regarding their observations and impressions of the defendant and the victim, Mercier's testimony was cumulative. The defendant claims that the impeachment served to discredit all of the witnesses who presented the same or similar evidence thereby unduly prejudicing the defendant. As previously stated,

this argument fails, because the state did not imply that the prior invocation was relevant to any witness' credibility except that of Mercier.

On the basis of the foregoing, we cannot conclude that the evidentiary rulings of which the defendant complains had a prejudicial impact on the outcome of the trial. *State* v. *Vilalastra,* supra; *State* v. *Jones,* supra.

## II

The defendant also challenges the state's comments during summation regarding the credibility of Mercier as a defense witness. During final argument, the state attacked Mercier's credibility by contrasting Mercier's initial invocation of his fifth amendment privilege in response to questions concerning marihuana use with his subsequent waiver and denial of marihuana use.[5]

Unlike the aforementioned claims of prosecutorial misconduct, this claim was not preserved at trial. The failure to raise distinctly at trial the matter being objected to ordinarily renders a claim unreviewable on appeal. Practice Book § 4185.[6] The defendant, however,

---

[5] During its summation the state argued: "The defendant's best friend, Dean Mercier, a man who was at the defendant's apartment, according to him, ninety percent of the time on the weekends, left this courtroom with no credibility whatsoever. First he claims his fifth amendment right not to incriminate himself in response to a line of questioning about his mental [state] and his level of sobriety or lack thereof when he was at that apartment, then, he comes back in and wants to answer the questions in a different way. If he was really being straightforward with us, members of the jury, why didn't he answer the question the first time? Because he is not being straightforward. He is playing games with this Court. He only wants to help his best friend. He has no credibility. What he saw or did not see at that Danbury apartment is as elusive as a puff of smoke."

[6] Practice Book § 4185 provides in pertinent part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

urges this court to review his claim as plain error under § 4185.[7] " 'Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985)." *State* v. *Johnson,* 214 Conn. 161, 171, 571 A.2d 79 (1990). While the summation remarks were highly inappropriate,[8] under the facts here presented we cannot say that in the context of the entire trial the summation remarks "constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of his trial." Id.; *State* v. *Hinckley,* supra, 88. Accordingly, there is no plain error in this case.

In evaluating the reasons set forth above, we note that the cumulative effect of the contested rulings was not so prejudicial as to have affected the outcome of the trial. Even if we were to consider the defendant's unpreserved claim in assessing the overall effect, our conclusion would be the same.

Accordingly, we affirm the judgment of the Appellate Court.

In this opinion the other justices concurred.

---

[7] Although the defendant refers to this claim in constitutional terms, at oral argument he clearly stated that his claim of reviewability was premised on the plain error doctrine. Therefore, we see no need to address its reviewability under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), and *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

[8] "The prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses. *United States* v. *Modica,* [663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; *United States* v. *Drummond,* 481 F.2d 62 (2d Cir. 1973); *State* v. *Floyd,* 10 Conn. App. 361, 365, 523 A.2d 1323 [cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126] (1987); ABA Standards for Criminal Justice (Second), The Prosecution Function § 3-5.8 (b) (1985) . . . ." *State* v. *Williams,* 204 Conn. 523, 541, 529 A.2d 653 (1987).