STATE OF CONNECTICUT *v.* EDDIE DENNISON
(8800)

DUPONT, C. J., DALY and FOTI, Js.

Argued November 8, 1990—decision released January 29, 1991

*Susan Cococcia,* deputy assistant public defender, with whom were *Suzanne Zitser,* assistant public defender, and, on the brief, *G. Douglas Nash,* public defender, for the appellant (defendant).

*James M. Ralls,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David Gold,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit robbery in the first degree while armed with a deadly weapon in violation of General Statutes §§ 53a-49 (a) (2), 53a-133 and 53a-134 (a) (2). The defendant claims that the trial court (1) improp-

erly permitted the defendant's witness to invoke his fifth amendment privilege in the jury's presence, (2) improperly allowed cross-examination of the defendant's witness concerning his failure to come forward until the trial, (3) allowed improper closing arguments by the prosecutor, (4) incorrectly instructed the jury on reasonable doubt, and (5) incorrectly charged the jury on the statutory definition of robbery. The judgment of the trial court is affirmed.

From the evidence presented at trial, the jury could reasonably have found the following facts. Shortly after midnight on January 31, 1988, the victim, Andre Davis, and his friend, Richard Clark, drove to the front of 109 Hurlburt Street in New Haven, stopped, and exited the car to talk with another friend, Karen Taylor. Their conversation occurred a short distance from the victim's car. As the victim and Clark were returning to their car, they passed the defendant who was standing in the midst of a group of men. The defendant pressed a gun to the victim's stomach and led him to an alley next to 109 Hurlburt Street. The defendant attempted to take the victim's wallet and a struggle ensued. Clark then came to the aid of the victim. During the struggle, a shot was fired from the group of men on the street, and, shortly thereafter, a shot was fired from the defendant's gun. Clark fled. While the struggle was continuing, another man, Demetrious Woods, came into the alley with his gun drawn. The victim and the defendant were still fighting when the defendant's gun fell to the ground. At that point, the victim turned to run but was shot in the back by Woods and fell to the ground. Eventually, the victim pulled himself up and called for help.

The defendant's sister, Albertha Robinson, resided with her niece, Karen Taylor, in a third floor apartment on Hurlburt Street. When Robinson heard the first two shots, she looked out the window to the alley. She heard

the crowd yelling to Woods to shoot, heard the third shot and saw the victim exit the alley and fall to the ground. Robinson and Taylor went outside to the victim who told them that Woods had shot him while the defendant tried to rob him. Police and an ambulance arrived thereafter and took the victim to a hospital.

I

The following procedural facts are germane to the defendant's first claim. The defendant called Clark as his witness during trial. Clark was an inmate at the Manson Youth Institute in Cheshire serving a sixteen year sentence for the offense of manslaughter. Clark was represented by counsel during the course of his testimony. Outside the presence of the jury, Clark was questioned about his prior record, his knowledge and use of weapons, particularly handguns, and his most recent conviction. Clark invoked his fifth amendment privilege against self-incrimination in the presence of the jury and refused to answer three of the questions that had been asked of him outside the presence of the jury. The defendant had objected to these questions and to Clark's invocation of the fifth amendment going before the jury because it served no purpose. The court overruled the objection, and the defendant excepted.

On appeal, the defendant states in his first claim that it was improper for the trial court to allow the witness to invoke his fifth amendment privilege before the jury, but then claims (1) that there was prosecutorial misconduct in forcing the witness to invoke the fifth amendment privilege before the jury, and (2) that the state unfairly bolstered its case from inferences not subject to rehabilitation. The defendant made no such claims to the trial court. There, he objected because the questions and invocation of the fifth amendment in the presence of the jury would serve no purpose. The claims of prosecutorial misconduct and unfair bolster-

ing of the state's case were not distinctly presented to the trial court as required by Practice Book §§ 288 and 4185, and thus we are not bound to consider them on appeal. *State* v. *Burroughs,* 22 Conn. App. 507, 511–12, 578 A.2d 146 (1990). Moreover, the defendant's claim does not raise any constitutional issues, rather it is a claim of evidentiary trial error. *State* v. *Person,* 215 Conn. 653, 659, 577 A.2d 1036 (1990), cert. denied, U.S. , 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991). Because the defendant has not raised a constitutional claim, it does not warrant further review in its unpreserved state under the *Evans-Golding* criteria. *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). The defendant has also requested review under the plain error doctrine. Practice Book § 4185. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). The three times the witness invoked his fifth amendment rights before the jury in the context of the entire trial did not rise to the level of such manifest injustice so as to impair the effectiveness or integrity of the defendant's trial. *State* v. *Person,* supra, 666. Thus, there is no plain error in this case.[1]

## II

The defendant next claims that the court improperly allowed the cross-examination of Clark because the state failed to lay a foundation before asking why Clark did not come forward sooner with his exculpatory evidence regarding the defendant. The defendant did not object to this line of questioning during the trial and now seeks review under the *Evans-Golding* criteria. *State* v. *Golding,* supra. We conclude that the defend-

---

[1] Even if we were to consider the defendant's claims, we would find them without merit. See, e.g., *State* v. *Person,* 20 Conn. App. 115, 118–23, 564 A.2d 626 (1989), aff'd, 215 Conn. 653, 577 A.2d 1036 (1990).

ant has not raised a constitutional claim; *State* v. *Jones,* 205 Conn. 723, 736–38, 535 A.2d 808 (1988); *State* v. *Eaddy,* 16 Conn. App. 264, 271, 547 A.2d 912 (1988); or one that even approaches plain error; Practice Book § 4185; and therefore decline to review it.

## III

The defendant next claims that certain comments during the assistant state's attorney's closing argument violated the defendant's federal and state constitutional rights to due process and a fair trial. Specifically, the defendant claims that the prosecutor (1) commented on Clark's invocation of his fifth amendment privilege,[2] (2) commented on Clark's pretrial silence,[3] (3) vouched for the state's witness, Albertha Robinson,[4] and (4) commented on the defendant's failure to testify,[5] and

---

[2] Commenting on the testimony of defendant's witness, Clark:

"The State: And when questions came to Mr. Clark's attention that he chose not to answer, he exercised his fifth amendment—

"The Defendant: I object to that, judge. I'm sorry.

"The Court: Overrule the objection.

"The State: I'm just—I am not suggesting he doesn't have a constitutional right to exercise his fifth amendment. He did . But it was interesting, I thought, he looked the same way and said no, I don't carry a gun, I don't use a gun and then he did, as is his right, exercise the fifth amendment with that same composure."

In rebuttal, the state then commented: "[W]hen [the witness] takes, as is his right, he takes the fifth amendment, we know it is right to do it, but I think that you can assess his credibility by considering that."

[3] The state in summation made the following comparison:

"And Albertha Robinson gave her statement at the police station that day right then, January 31. She didn't show up in court like Richard Clark did two years later. She gave a statement to police right then and there. Richard Clark, he left the scene conveniently."

[4] The defendant referred to the same portion, excerpted in footnote 2, supra, and to the following: "You know, Richard Clark came in and he takes the defendant out of the case. Pretty much that's what he said. He's doing a sixteen year sentence and he comes in here and testifies on behalf of Eddie [the defendant], the man he knows as Eddie and in the course of doing that he really says oh, by the way, Eddie, your sister [Albertha Robinson] is a liar as well because that's also what Richard Clark is saying."

[5] The prosecutor commented: "Isn't it interesting to you that with all the cross-examination there was no cross-examination at all of Mr. Davis

thus engaged in prosecutorial misconduct. The state argues that the defendant has failed to preserve these claims for review because he failed to object or except to them at trial.[6] Practice Book §§ 288 and 4185. We must now consider whether to grant review under the *Evans-Golding* criteria; *State* v. *Golding,* supra; or the plain error doctrine; Practice Book § 4185; as requested by the defendant. See *State* v. *Rogers,* 207 Conn. 646, 653, 542 A.2d 1136 (1988).

The record in this case does not support a claim that the defendant was clearly deprived of a fair trial. "The challenged remarks did not give rise to the level of character assassination and vitriolic personal attacks that we have held to constitute a denial of the constitutional due process right to a fair trial." *State* v. *Rogers,* supra, 654; *State* v. *Williams,* 204 Conn. 523, 539–40, 529 A.2d 653 (1987). We conclude, therefore, that the remarks

about the fact that some months after this the defendant, Mr. Dennison, yelled down to Andre Davis: 'Hey, I need to talk to you for a minute, Andre.' He came down and said, 'Hey man, Andre, I'm sorry, I'm sorry for what I did. You know I was on drugs.'

"Now, Mr. Davis was here and was cross-examined for a long time. No questions about that. What was he apologizing for? If you listen to Mr. Clark, what was he apologizing for? Because he resisted Andre when Andre pulled the gun out? Of course not. He apologized. He said I know I'm going to have to turn myself in, but I'm sorry.

"And what does Andre Davis say to the defendant? He didn't—you weren't the guy who shot me. He was up front with him. I didn't—you weren't the guy who shot me. He was up front with him. I didn't tell them you shot me. I told them Meechie [Woods] shot me. But, hey, I told them what you did and I gave them a statement and I got to go in and testify about it.

"He didn't say I added something. But, you know, the defense didn't cross-examine Mr. Davis about that. Everything else, sure. But not about that. And he just says well, I was on drugs at the time. He can't blame everything on that."

[6] The defendant's only objection was to the prosecutor's comment on Clark's invocation of the fifth amendment privilege against self-incrimination, but once overruled he failed to except. The defendant argues that his objection and exception during Clark's cross-examination earlier in the trial would have sufficiently preserved his claim. This reasoning is without merit and was rejected in *State* v. *Williams,* 204 Conn. 523, 536, 529 A.2d 653 (1987).

of the prosecutor set forth in the record do not rise to the level of state or federal constitutional breach.

## IV

The defendant next challenges the court's instructions on reasonable doubt. During its charge, the court defined reasonable doubt as one "for which a valid reason can be assigned," and "for which if necessary you can give an explanation to your fellow jurors in the jury deliberation room." The record reveals that the defendant neither objected to this portion of the charge nor submitted any request to charge on these issues. In its unpreserved state, the defendant now claims that these phrases constituted constitutional error and warrant review under the *Evans-Golding* criteria. *State* v. *Golding,* supra.

The trial court's instructions on reasonable doubt are the same or similar to jury instructions that have previously been approved. *State* v. *Thomas,* 214 Conn. 118, 119–20, 570 A.2d 1123 (1990), and cases cited therein. No review is warranted, therefore, because the defendant cannot show that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding,* supra, 247.

## V

The defendant finally claims that while there was evidence that force was used to subdue the victim, satisfying General Statutes § 53a-133 (1), there was no evidence before the jury to support the conclusion that force was employed to compel the victim to deliver up the property, pursuant to General Statutes § 53a-133 (2).[7]

---

[7] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

The defendant argues, therefore, that the trial court should not have charged the jury on General Statutes § 53a-133 (2). The defendant has failed to preserve this claim and now seeks review under *Evans-Golding. State* v. *Golding,* supra. Because this claim is similar to the claim reviewed in *State* v. *John,* 210 Conn. 652, 687, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), and in *State* v. *Williams,* 202 Conn. 349, 361–63, 521 A.2d 150 (1987), we will grant review.

We begin by noting that the defendant was charged with attempted robbery pursuant to General Statutes § 53a-49 (a) (2).[8] For a conviction of attempted robbery, the state must prove that the defendant possessed the requisite mental state and took a substantial step in committing a robbery. General Statutes § 53a-49 (a) (2). Specifically, the state must show that the defendant took a substantial step in committing larceny, by attempting to use or threaten force on the victim for the purpose of either (1) "preventing or overcoming resistance to the taking" of property, or (2) compelling the victim to "deliver up" the property. General Statutes § 53a-133 (defining the elements of robbery).[9] The court read subdivisions (1) and (2) of the robbery statute, General Statutes § 53a-133, concerning the necessary intent, and then went on to define the other elements such as larceny, intentional conduct, force and threat. The court then reiterated that the jury must determine whether force was used or threatened for either of the two purposes in General Statutes § 53a-133, for preventing or overcoming resistance to a taking or for compelling another to deliver up the property.

---

[8] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in course of conduct planned to culminate in his commission of the crime."

[9] See footnote 7, supra.

The state presented evidence showing that the defendant pressed a gun to the victim's stomach, led him into an alley, attempted to take the victim's wallet and struggled with the victim. Thus, there was sufficient evidence for the jury reasonably to conclude that there was an attempt to force the victim to deliver up his property. Therefore, the court properly instructed the jury on the robbery statute. See, e.g., *State* v. *John*, supra; *State* v. *Pelletier*, 209 Conn. 564, 575–76, 552 A.2d 805 (1989); *State* v. *Scott*, 20 Conn. App. 513, 517, 568 A.2d 1048, cert. denied, 214 Conn. 802, 573 A.2d 316 (1990); *State* v. *Horne*, 19 Conn. App. 111, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990).

The judgment is affirmed.

In this opinion the other judges concurred.