**Eric N. PERSON**

v.

**Larry R. MEACHUM, Commissioner, Department of Correction.**

**Civ. No. B–90–579 (JAC).**

United States District Court, D. Connecticut.

Aug. 6, 1991.

Hubert J. Santos, Santos, Peck & Smith, Hartford, Conn., for petitioner.

Harry Weller, Asst. State's Atty., Appellate Unit, Office of the Chief State's Atty., Wallingford, Conn., for respondent.

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

Petitioner Eric N. Person, who is currently serving two concurrent ten-year terms of imprisonment at the Connecticut Correctional Institution at Somers, has filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, arguing that he is currently in state custody in violation of his constitutional right to due process. On January 26, 1988, a judgment of conviction was entered against him in Connecticut Superior Court, Judicial District of Danbury, after a jury found him guilty of sexually assaulting his younger daughter, in violation of Conn. Gen.Stat. § 53a–71(a)(1), and of risking injury to a minor, in violation of Conn.Gen. Stat. § 53–21. The jury also acquitted petitioner of two counts—of sexual assault and

of risk of injury—with respect to his older daughter.

Both parties have moved for summary judgment. At a hearing and oral argument on June 17, 1991, the parties agreed that there exist no issues of material fact in dispute requiring an evidentiary hearing. After I permitted both parties to submit post-hearing supplemental memoranda, this matter was deemed submitted for decision.

## I. BACKGROUND

The State of Connecticut formally commenced prosecution of petitioner when it filed an information naming him on November 6, 1987. The information charged petitioner with sexually assaulting both of his daughters. With respect to his eight-year-old daughter,[1] he was charged with one count of sexual assault in the second degree and one count of risk of injury to a minor; with respect to his sixteen-year-old daughter, he was charged with one count of sexual assault in the fourth degree and one count of risk of injury to a minor. Petitioner was tried before a jury of six between November 12, 1987 and December 9, 1987, and the Honorable Patricia A. Geen presided over eleven days of testimony. On December 15, 1987, the jury returned its verdict of "guilty" on the two counts relating to the younger daughter and "not guilty" on the two counts relating to the older daughter.

Judge Geen denied petitioner's motion to set aside the verdict and for acquittal, concluding that "the verdict was more than substantiated by the evidence." Trial Transcript (Appendix A to Petitioner's Memorandum in Support of Motion for Summary Judgment (filed Apr. 26, 1991) ("Petitioner's Memorandum")) ("Tr.") (Jan. 26, 1988) at 5. Judge Geen sentenced petitioner to the custody of the respondent for a period of ten years on each of the two counts, to be served concurrently. *Id.* at 30.

---

1. The child was eight at the time of the trial, but the events to which she testified occurred when she was between the ages of five and seven.

Petitioner appealed from his conviction to the Appellate Court of Connecticut. He raised seven claims of error on appeal:

(FIRST) That the court erred in permitting the state prosecutor's repeated elicitation of the Fifth Amendment privilege from a key defense witness in the presence of the jury; and that the prosecutor was guilty of misconduct when she not only knew that the witness would invoke the privilege but she made reference to the invocation of the privilege in recross-examination and during closing argument;

(SECOND) That the court erred in prohibiting defendant from presenting expert witnesses to testify that he did *not* fit the profile of a pedophile or of a sexual deviate;

(THIRD) That the court erred by refusing defendant's request to present evidence that his younger daughter's best friend had accused her own father of conduct similar to that of which petitioner was accused;

(FOURTH) That the court erred in admitting into evidence an audiotaped interview between a police detective and the victim and in permitting the jury to take the tape into the jury room during the deliberations;

(FIFTH) That the court erred in permitting two police detectives to give opinions concerning the victim's credibility and concerning "common pattern" evidence in child abuse cases;

(SIXTH) That the court erred in twice refusing to grant a mistrial following the prosecutor's intentional and improper questioning concerning the use of marijuana at petitioner's apartment; and

(SEVENTH) That the court erred in admitting hearsay testimony that the defendant's sister had told his older daughter not to testify and then in advising the defendant's sister, while in the presence of the jury, of her privilege against self-incrimination.

*See State v. Person*, 20 Conn.App. 115, 118–33, 564 A.2d 626, 629–36 (1990). The Appellate Court affirmed the conviction. A motion for reargument *en banc* was denied, and the petitioner filed for a petition of certification to the Connecticut Supreme Court. The Connecticut Supreme Court granted petitioner's motion for certification, limited to the following issues:

(1) May the state, in a criminal prosecution, require a defense witness to invoke the privilege against self-incrimination in open court, and may it use such invocation and subsequent waiver as a basis for impeaching the witness and for adverse comment in its summation?

(2) If the trial court's ruling to permit such conduct was erroneous, was the Appellate Court correct in concluding that the error was harmless?

*State v. Person*, 213 Conn. 811, 568 A.2d 796 (1990).

The Connecticut Supreme Court affirmed petitioner's conviction on July 17, 1990. *State v. Person*, 215 Conn. 653, 577 A.2d 1036 (1990). Petitioner's petition for a writ of certiorari to the United States Supreme Court was denied on January 14, 1991. *Person v. Connecticut*, —— U.S. ——, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991).

On November 15, 1990, petitioner filed his petition for habeas corpus. Although the original petition raised the seven claims of error originally raised before the Appellate Court, petitioner has chosen to pursue only three of the original seven claims. These are: (1) That petitioner was deprived of his rights under the Fourteenth Amendment to a fair trial when the prosecutor repeatedly and improperly elicited the invocation of the Fifth Amendment from Dean Mercier ("Mercier"), a key defense witness; (2) that petitioner was deprived of his rights to compulsory process and to present a defense when he was not allowed to examine his younger daughter's best friend on concerning similar accusations of sexual abuse about her own father; and, finally, (3) that petitioner was denied his right to a fair trial by the prosecutor's repeated questioning of various witnesses concerning the use of marijuana at petitioner's apartment.

## II. DISCUSSION

Erroneous evidentiary rulings do not automatically rise to the level of constitutional error. The court's duty on a petition for habeas corpus is to determine whether the error was sufficiently material so as to deprive the petitioner of fundamental fairness. *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988). A writ of habeas corpus may issue only where the petitioner can show that the error deprived him of a fundamentally fair trial. *See Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.), *cert. denied*, 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983); *see also Rosario*, 839 F.2d at 925.

### A. *Invocation of the Fifth Amendment Privilege*

At trial, petitioner called several witnesses who spent time at his apartment to testify that they never observed any unusual or improper activity between him and his daughter. Mercier, who was petitioner's best friend, testified that he was often in petitioner's apartment when his daughter was visiting and that he never observed any unusual behavior between the petitioner and his daughter and that he believed that they had a good relationship. *State v. Person*, 215 Conn. at 657, 577 A.2d at 1038. On cross-examination, the following colloquy took place:

Q. Well, how sharp would you say your perception of events taking place in the apartment was at the—between the dates in question?

A. Very sharp.

. . . .

Q. Well, isn't true, sir, that with regard to your powers of perception while you were at the defendant's apartment during the dates in question, that you were frequently smoking marijuana—

Tr. (Dec. 3, 1987) at 76–77.

The petitioner objected to this question, and Judge Geen excused the jury. After the court ruled that the prosecutor's question was proper because smoking marijuana "has a bearing upon the ability of a person to remember and relate," *id.* at 80, Mercier requested the opportunity to consult with his attorney. After he was recalled for cross-examination and the prosecutor once again asked him about his marijuana use, Mercier invoked his privilege against self-incrimination. *Id.* at 111. The prosecutor asked ten questions relating to the use of marijuana, and to each question, Mercier invoked his Fifth Amendment privilege.

On the following day, petitioner recalled Mercier to the stand, and he waived his Fifth Amendment privilege. Tr. (Dec. 4, 1987) at 5. During recross-examination, the prosecutor inquired of Mercier whether he changed his answer because he learned that he could not be prosecuted for his marijuana use. *Id.* at 9–10. Mercier responded that his prior invocation of his privilege resulted from his confusion during cross-examination. The prosecutor continued by asking a series of questions designed to demonstrate an inconsistency between Mercier's prior invocation of his Fifth Amendment privilege and his present denial of marijuana use at the petitioner's apartment.

The Connecticut Appellate Court concluded, and respondent has conceded, that "it was improper for the trial court to permit recross-examination for the purpose of establishing inconsistency between the implications of Mercier's assertion of the privilege against self-incrimination and his subsequent testimony that he had not used marijuana in the defendant's apartment." *Person*, 20 Conn.App. at 123, 564 A.2d at 631. However, the Appellate Court also concluded that the error was harmless. *Id.; see also Person*, 215 Conn. at 660, 577 A.2d at 1040 (Connecticut Supreme Court concluding that petitioner has not met burden of demonstrating that erroneous action was harmful). "[T]he jury could reasonably have believed the testimony of both Mercier and the victim and still have found the defendant guilty." *Id.* at 664, 577 A.2d at 1041.

There are essentially two questions before me: First, was the error committed by the prosecutor purely "evidentiary" or could it implicate petitioner's constitutional right to due process of law for which habe-

as corpus relief is appropriate? Second, if the error could be a constitutional violation, were petitioner's due process rights in fact violated?

### 1. Has Petitioner Alleged a Constitutional Violation?

In *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), the Supreme Court considered the question of whether the trial court committed reversible error in permitting the Government to question witnesses about whether they engaged in criminal activity with the defendant after it was known that they were going to claim their privilege not to incriminate themselves. The Court held that reversible error can occur when *either* "the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege," *id.* at 186, 83 S.Ct. at 1154–55, *or* when, "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and this unfairly prejudiced the defendant," *id.* at 187, 83 S.Ct. at 1155; *see also United States v. Casamento*, 887 F.2d 1141, 1186 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *Rado v. Connecticut*, 607 F.2d 572, 581 (2d Cir.1979), *cert. denied*, 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980); *United States v. Maloney*, 262 F.2d 535, 537 (2d Cir.1959).[2]

Respondent argues that the Court in *Namet* "ruled unequivocally that a criminal defendant on direct appeal presents no constitutional claim when a witness, other than the defendant, is forced to plead the fifth amendment before the jury." *See* Respondent's Brief in Opposition to Motion for Summary Judgment and in support of his Motion for Summary Judgment (filed May 22, 1991) ("Respondent's Brief") at 10–11. Although the Court in *Namet* determined that "[n]o constitutional issues of any kind

[were] presented," *Namet*, 373 U.S. at 185, 83 S.Ct. at 1154, it is not clear whether the Court concluded that such a claim could *never* raise constitutional issues or whether it was simply not presented as a constitutional claim in that particular case. *See* Petitioner's Memorandum at 4.

In *Casamento*, our Court of Appeals stated that "[t]he due process rights of a defendant may be violated" when one or both prongs of the *Namet* rule are satisfied. *Casamento*, 887 F.2d at 1186. In other words, if the prosecutor consciously and flagrantly attempts to build the Government's case out of inferences arising from the invocation of the privilege or if inference from a witness' refusal to answer added "critical weight to the prosecution's case," *Namet*, 373 U.S. at 186–87, 83 S.Ct. at 1154–55, the defendant's due process rights would be violated.

The Connecticut Supreme Court concluded that the error in this case could only have been evidentiary error, because it interpreted *Namet* to mean that it was never constitutional error to cause a defense witness to invoke his Fifth Amendment privilege against self-incrimination in the presence of a jury. *Person*, 215 Conn. at 659, 577 A.2d at 1039. Furthermore, it held that attempting to impeach a witness through use of that witness' prior invocation of his Fifth Amendment privilege "does not rise to a constitutional level even if harm results, because the harm involves another's exercise of a constitutional privilege rather than a constitutional privilege of the defendant." *Id.* at 660, 577 A.2d at 1039.

■ I cannot concur with this holding of the Connecticut Supreme Court. Whether or not a *Namet* violation amounts to a violation of due process depends on the circumstances of the case. It is a misreading of *Namet* to conclude that a prosecutor's repeated elicitation of the Fifth Amendment privilege from a defense wit-

---

**2.** *Namet* was an appeal from a conviction in federal court for violation of federal wagering tax laws. The standard was whether or not the prosecution committed *reversible* error. Under the facts of *Namet,* the Court held that no re-

versible error was committed, and it affirmed the conviction. In this case, the question presented is whether *Namet* error can ever amount to *constitutional* error.

**74**

ness in the presence of the jury could *never* deprive a defendant of a fundamentally fair trial. As a purely jurisdictional matter, I shall entertain petitioner's application, for he has indeed alleged a violation of his rights under the Due Process Clause of the Fourteenth Amendment. The next question is whether or not his constitutional rights were in fact violated.

### 2. *Was Petitioner Deprived of Due Process?*

As our Court of Appeals stated in *Casamento,* petitioner's due process rights may be violated (1) when the prosecution commits misconduct by consciously or flagrantly attempting to build its case out of the inferences arising from the invocation of the testimonial privilege; or (2) when inferences from a witness' refusal to answer added critical weight to the prosecution's case. *Casamento,* 887 F.2d at 1186 (quoting *Namet,* 373 U.S. at 186–87, 83 S.Ct. at 1154–55).

It is clear that the prosecutor's intent in cross-examining Mercier on his use of marijuana was to impeach his testimony that he was able accurately to perceive the petitioner's behavior with his younger daughter while he was with them in petitioner's apartment and that he could effectively recall his perceptions on the witness stand. But "[w]hen a witness claims his privilege, a natural, indeed an almost inevitable, inference arises as to what would have been his answer if he had not refused." *United States v. Maloney,* 262 F.2d 535, 537 (2d Cir.1959) (L. Hand, J.). In *Namet* and in *Casamento,* the witnesses invoked their Fifth Amendment privileges when questioned about criminal activity in which they had allegedly engaged *with the defendant.* In those cases, the defendants argued that the invocation of the privilege "naturally" gave rise to the inference that the defendants engaged in the criminal conduct.

In this case, the only inference that reasonably could have been drawn is that defendant permitted and possibly joined Mercier in the smoking of marijuana while in the presence of his younger daughter. As the Connecticut Supreme Court reasoned, "[w]ithout any logical nexus between the charges pending against the defendant and the subject matter about which Mercier was questioned, there was no reasonable basis from which the jury could draw an inference of defendant's guilt." *Person,* 215 Conn. at 663, 577 A.2d at 1041. It is simply unreasonable to believe that the jury might have drawn the inference that the petitioner sexually abused his daughter because it had already drawn the inference that petitioner smoked marijuana in her presence. Had petitioner been on trial for smoking marijuana in the presence of a minor, the prosecutor's conduct might have been sufficient to violate petitioner's due process rights. Under the circumstances of this case, however, no due process violation occurred.

Mercier's subsequent decision to waive his Fifth Amendment privilege—and to deny that he ever used marijuana in the petitioner's apartment while the petitioner's younger daughter was present—and the prosecutor's inquiry concerning the apparent inconsistency between his prior invocation of the privilege and his subsequent testimony did not prejudice the petitioner. At most, the prosecutor raised significant doubts about Mercier's credibility. But he was not the only witness who testified as to the seemingly normal relationship between father and daughter; even if Mercier's credibility was unfairly placed into doubt, his testimony was cumulative.

Even more importantly, Mercier's refusal to answer added little if anything to the weight of the State's evidence against the petitioner, which was built almost entirely on the shocking testimony of petitioner's eight-year-old daughter. Based on the entire record, the prosecutor's conduct with respect to the questioning of Mercier, although found to be "highly inappropriate" as a matter of state law, *Person,* 215 Conn. at 661, 577 A.2d at 1040, simply did not amount to the deprivation of his rights to a fundamentally fair trial.[3]

3. Although petitioner and respondent have argued vigorously over which side would bear the

**B.** *Compulsory Process*

Petitioner's second ground for habeas corpus relief is that he was deprived of his right to compulsory process guaranteed under the Sixth Amendment and made applicable to the states through the Fourteenth Amendment. Specifically, petitioner claims that his right to present a defense were violated by the trial judge's refusal to permit evidence that the best friend of petitioner's younger daughter had made "extremely similar sexual abuse allegations about her own father." Petitioner's Memorandum at 11.[4]

Petitioner's whole defense was based on the theory that his younger daughter learned about explicit sexual activity from watching adult movies on television and from hearing stories from her best friend. Tr. (Nov. 24, 1987) at 16. Judge Geen ruled that any testimony by the friend about her own experiences of sexual abuse would be irrelevant, immaterial, and in violation of Connecticut General Statute sections 54–86d and 54–86e.[5] *Id.* at 19.

▮▮▮ A defendant's right to call witnesses is not unlimited and must comply with established rules of evidence, *see Chambers v. Mississippi*, 410 U.S. 284,

302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Petitioner's right to pursue his defense was limited by laws designed to protect the identity of victims of sexual assault.[6] But more importantly, the testimony of the child's friend was irrelevant and immaterial. As the Connecticut Appellate Court stated when affirming the petitioner's conviction,

> [t]he [petitioner's] argument rests upon an assumption that the victim's credibility would somehow automatically be placed in question by evidence of the fact that she had a friend who claimed, as did she herself, to have been the victim of sexual abuse. There is no necessary logical link, however, between the fact that the victim had a friend who also claimed to be a victim of sexual abuse and a conclusion that the victim might therefore be an unreliable witness whose testimony regarding the [petitioner's] actions was not worthy of belief.

*State v. Person*, 20 Conn.App. at 127–28, 564 A.2d at 633–34.

In the affidavit in support of the arrest warrant for the best friend's father, the affiant wrote that he spoke with her alone and that she "did not have any concept of

---

burden of proving harmlessness beyond a reasonable doubt, *compare* Petitioner's Supplemental Memorandum (filed June 21, 1991) *with* Respondent's Supplemental Memorandum (filed June 27, 1991), that question is only reached after it is determined that a constitutional error has occurred. Because I have found that there was no so-called *Namet* error, I need not engage in harmless-error analysis under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**4.** Respondent argues that petitioner's second claim for relief is procedurally barred because he did not adequately raise this argument before the Appellate Court. This argument is without merit. Even a cursory review of petitioner's reply memorandum to the Appellate Court reveals that he indicated the federal nature of his claim, thereby preserving his right to raise it in a petition for habeas corpus. *See* Appellant's Reply Brief (Appendix E to Petitioner's Memorandum) at 11.

**5.** Section 54–86d reads in pertinent part that [a]ny person who has been the victim of sexual assault ... shall not be required to divulge his or her address or telephone number during any trial or pretrial evidentiary

hearing arising from the sexual assault ... provided that the judge presiding over such legal proceeding shall find: (1) Such information is not material to the proceeding; (2) the identity of the victim has been satisfactorily established; and (3) the current address of the victim is made available to the defense. Conn.Gen.Stat. § 54–86d (1985).

Section 54–86e reads as follows:
The name and address of the victim of a sexual assault ... shall be confidential and shall be disclosed only upon order of the superior court, except that such information shall be available to the accused. Conn.Gen.Stat. § 54–86e (1985).

**6.** Judge Geen concluded that the best friend was a member of the class of persons protected by the Connecticut shield laws. She was the complainant in a separate criminal action, *see* Application for Arrest Warrant (Appendix C to Petitioner's Memorandum), and the statutes themselves are broadly worded. "They are clear, they are plain. She is not to be questioned, give her name and address and go into a set of questions about any sexual assault of her. Otherwise, the statute would be absolutely, totally useless." Tr. (Nov. 24, 1987) at 13.

ejaculation." Application for Arrest Warrant (Appendix C to Petitioner's Memorandum) at 3. In contrast, during her direct examination, petitioner's daughter testified as follows:

Q. And, what would happen?

A. Well, I would feel the gooey stuff come in my mouth, and I would try to spit it out, but it just went down my throat.

Q. What was the gooey stuff like?

A. Well, it was sort of whitish—whitish clearish, and it would be gooey and sticky and everything.

Tr. (Nov. 12, 1987) at 39.[7] As Judge Geen acknowledged before sentencing the petitioner and after presiding over the entire trial:

There was an effort, a good effort, made by the defense to try to show that the youngster was relaying what she had seen on Playboy Channel Television, pornographic in nature. That defense didn't work because on television you do not have touch, feel. That little girl was able to describe a physical ejaculation, the feel of seman [sic], its color, in the way nobody could do except if it had happened to them.

... Her statement to the police in February and her evidence in court in December [sic] was consistent, but not by rote. There were differences in words, differences in expressions, but consistency of factual recitation of the overall history with her father. There's no doubt in my mind that it happened and that the defendant is guilty.

Tr. (Jan. 26, 1988) at 25. The trial court's exclusion of the testimony of the daughter's best friend on grounds of irrelevance, immateriality, and arguable privilege under Connecticut shield laws did not amount to an unconstitutional violation of petitioner's right to present a defense.

C. *Questioning Concerning Use of Marijuana*

█ Petitioner argues as his third ground for habeas corpus relief that the prosecutor's deliberate, intentional and improper questioning concerning the use of marijuana at his apartment violated his due process rights because it rendered the trial fundamentally unfair. Petitioner's Memorandum at 14.

The first time the issue of marijuana was raised was when the prosecutor asked petitioner's younger daughter whether her father smoked anything other than cigarettes. Tr. (Nov. 12, 1987) at 59. After dismissing the jury, Judge Geen ruled that the question of petitioner's use of marijuana was irrelevant to the allegations of sexual abuse, but she also denied petitioner's motion for a mistrial. *Id.* at 62. When the jury returned, Judge Geen gave the following cautionary instruction: "All right. Now, ladies and gentlemen, we've had our little legal discussion. Therefore, I just want to tell you that you are to ignore and strike from your mind any questions about smoking cigarettes or anything else." *Id.* at 63.

Petitioner argues, however, that this asserted prosecutorial "misconduct was not limited to one isolated incident, but was repeated throughout the trial." Petitioner's Memorandum at 15. Not only did the prosecutor engage in the colloquy with Mercier discussed previously, but she also asked Joseph Marzullo, petitioner's landlord, whether it would change his generally favorable opinion of the relationship between petitioner and his daughter if he "knew that the defendant would regularly smoke marijuana in front of the children." Tr. (Nov. 24, 1987) at 93. After excusing the jury, Judge Geen once again sustained petitioner's objection while denying his motion for a mistrial. Upon the jury's return, Judge Geen gave another cautionary instruction:

Now, ladies and gentlemen, with reference to the question as to whether the witness had ever heard of whether or not Mr. Person had ever smoked marijuana exclude that from your mind. That's

---

**7.** This was not an isolated reference to explicit sexual contact in the testimony of petitioner's daughter. Indeed, her testimony is replete with similar references. *See, e.g.,* Tr. (Nov. 12, 1987) at 40, 41–42, 43–44, 45, 53.

totally irrelevant in this particular case, and in these proceedings up to this point, there is nothing involved with that. And, therefore, you are to disregard that question.

*Id.* at 99.

Petitioner argues that the prosecution's repeated questioning about the use of marijuana was particularly damaging because petitioner was being tried for risk of injury to a minor in violation of Connecticut General Statute section 53–21.[8] Petitioner argues that the jury could have convicted him of risking the injury of his younger daughter simply on the basis of the inference drawn from the prosecutor's improper questions about marijuana smoking in petitioner's apartment.

Although Judge Geen herself recognized this as a possible danger, *see* Tr. (Dec. 3, 1987) at 79, the Connecticut Supreme Court explicitly stated that "[s]uch an inference of guilt is not reasonable in this case, however, because the specifications of the charges against the defendant were exclusively acts of a sexual nature." *Person*, 215 Conn. at 663, 577 A.2d at 1041. Furthermore, Judge Geen's instructions cured any confusion that the jury might have felt. Based on the full record of the trial, there is no question that the jury found petitioner guilty of violating section 53–21 based on the evidence of sexual abuse.

The fact that the jury acquitted petitioner on the two counts charging him with risk of injury and sexual assault of the *older* daughter suggests that the petitioner was not confronted with insurmountable prejudice on the part of the jury. On the contrary, a review of the full record of this case leads inescapably to the conclusion that petitioner received a fundamentally fair trial. As the Supreme Court has repeatedly stated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Rose v. Clark*, 478 U.S. 570,

579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *United States v. Hasting*, 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980–81, 76 L.Ed.2d 96 (1983).

### III. CONCLUSION

For the foregoing reasons, petitioner's Motion for Summary Judgment (filed Apr. 26, 1991) is DENIED and respondent's Cross–Motion for Summary Judgment (filed May 22, 1991) is GRANTED. Judgment shall enter in favor of respondent.

In light of the court's ruling, petitioner's Renewed Motion to Set Bail pending resolution of the petition for habeas corpus is DENIED as moot.

It is so ordered.

---

8. Section 53–21 reads as follows:
   Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both.
   Conn.Gen.Stat. § 53–21 (1985).