STATE OF CONNECTICUT *v.* EDDIE DENNISON
(14289)

SHEA, CALLAHAN, COVELLO, BORDEN and BERDON, Js.

Argued October 3—decision released December 24, 1991

indebted to the claimant." *Ringle* v. *Wallis Iron Works,* 93 N.Y. (86 Hun.) 153, 155–56, 33 N.Y.S. 398 (1895), aff'd, 155 N.Y. 674, 49 N.E. 1103 (1898).

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, and *Kent Drager* and *Susan Cococcia,* assistant public defenders, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David Gold,* assistant state's attorney, for the appellee (state).

BERDON, J. The issues raised in this appeal are grounded upon the ruling of the trial court requiring a defense witness, Richard Clark, to invoke his fifth amendment privilege against self-incrimination in the presence of the jury during cross-examination by the state. The Appellate Court refused to consider this claim because it concluded that the defendant, Eddie Dennison, had failed to state "distinctly" the reasons for his objections as required by Practice Book §§ 288 and 4185, and also declared that, even if the claims had been considered, the court "would find them without merit." *State* v. *Dennison,* 24 Conn. App. 27, 31 n.1, 585 A.2d 1240 (1991). The Appellate Court, after consideration of other issues not before this court, affirmed the conviction of attempt to commit robbery in the first degree while armed with a deadly weapon in violation of General Statutes §§ 53a-49 (a) (2)[1] and 53a-134 (a) (2).[2] The defendant, after this court granted certification of three issues pertaining to the invoca-

---

[1] General Statutes § 53a-49 (a) (2) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-134 (a) (2) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . is armed with a deadly weapon."

tion of the privilege,[3] appealed from the Appellate Court's judgment.

We conclude that the claimed error was adequately preserved, that the trial court improperly required the witness Clark to invoke his fifth amendment privilege against self-incrimination in the presence of the jury and that the error was harmful. Accordingly, we reverse the judgment of the Appellate Court.

Although the facts that the jury could reasonably have found are set forth in the opinion of the Appellate Court, we summarize those pertinent to the certified issues. Shortly after midnight on January 31, 1988, Andre Davis, the victim, and Clark, his friend, drove to Hurlburt Street in New Haven. They exited their vehicle and spoke with another friend. When they started to return to the vehicle, they passed the defendant, who was among a group of other people. The defendant pressed a gun to Davis' stomach, led him into an alley and attempted to take his wallet. A struggle ensued between Davis and the defendant, and Clark came to Davis' aid. During this time, a shot was fired from the group of people on the street. Shortly thereafter, the defendant's gun was also discharged. Clark then fled. While Davis was still struggling with the defendant, Demetrious Woods, a third party, appeared with his gun drawn. As Davis began to run, Woods shot him in the back.

[3] We granted the defendant's petition for certification limited to the following issues: "1. Did the Appellate Court properly conclude that the defendant's claim that the trial court was incorrect in permitting defense witness Richard Clark to invoke his fifth amendment privilege in front of the jury was not adequately preserved and thus did not warrant review on appeal?

"2. Did the Appellate Court properly conclude that even if it were to consider the defendant's claim based upon the trial court's ruling, the claim was without merit?

"3. If the trial court's ruling was incorrect, was the error harmless?" *State* v. *Dennison*, 219 Conn. 901, 593 A.2d 132 (1991).

The defendant elected not to testify, but offered the testimony of Clark, a friend of Davis. At the time he gave his testimony, Clark was an inmate at Manson Youth Institution in Cheshire serving a sixteen year sentence for manslaughter. The trial court appointed Attorney William Tiernan to advise Clark of his constitutional right against self-incrimination.[4] Clark testified that although he did not know what initiated the struggle between Davis and the defendant, it was Davis and not the defendant who had the gun. He stated that he had seen a gun in Davis' possession earlier in the evening, and that he saw Davis with the same gun at the time of the incident. Clark testified that as he attempted to break up the fight, the gun fell from Davis' hand to the ground. After seeing the gun fall, Clark heard a shot fired from behind him and saw Woods shoot Davis. Clark surmised that it was Woods who had fired the earlier shot.

In the presence of the jury, during cross-examination of Clark by the state and over the objections of the defendant, the state asked Clark the following three questions, which are the subject of the defendant's claims.

(1) "[Assistant State's Attorney David Gold]: Mr. Clark, you indicated earlier that you don't carry a gun. Isn't it a fact, sir, that in August of 1985 you had a gun with you, that you got involved in a fight with other people on a basketball court, you threatened all the rest of the people in the fight with the gun?

"[William Tiernan]: If your Honor please, I am going to suggest to my client that under the circumstances he avail himself of his fifth amendment privilege and not answer the question which may tend to incriminate him.

---

[4] The trial court stated that it was appointing Tiernan to advise Clark of his "constitutional rights so that he can make an informed decision as to whether he wishes to testify."

"[Richard Clark]: I will not answer that question, your Honor.

"The Court: All right. On the basis of the advice of your attorney.

"[Richard Clark]: Yeah.

"The Court: All right."

(2) "[David Gold]: And sir, isn't it also true that on May 7, 1986, you also were involved in an incident in which you produced a handgun in an effort to threaten someone else that was involved in a fight with you on May 7, 1986?

"[William Tiernan]: I again will advise my client, your Honor, not to answer that question for the reason that the answer may tend to incriminate himself and I advise him to take his fifth amendment privilege.

"[Richard Clark]: I will not answer that question either, your Honor, on the advice of my attorney.

"The Court: All right."

(3) "[David Gold]: And sir, isn't it also true that on May 2, 1988, at approximately 7 p.m. you were armed with a handgun and used that handgun to take the life of the victim for which you were later convicted of manslaughter?

"[William Tiernan]: With respect to that question, your Honor, and the question of the use of a weapon, I again suggest to my client that he not answer that question on the basis of the fact that the answer may tend to incriminate him.

"[Richard Clark]: I will not answer that question, your Honor.

"The Court: All right."

## I

The first issue presented in this appeal is whether the defendant adequately preserved his claim that the trial court improperly allowed the state to elicit Clark's invocation of the fifth amendment privilege during cross-examination in the presence of the jury. Practice Book § 288 provides in pertinent part that "[w]henever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had." Section 4185 provides in part that the Supreme Court is not "bound to consider a claim unless it was distinctly raised at the trial . . . ." We have noted that "[t]he purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction." *State* v. *Utz,* 201 Conn. 190, 207, 513 A.2d 1191 (1986). This rule is essential to avoid trial by ambush. *State* v. *King,* 216 Conn. 585, 590, 583 A.2d 896 (1990).

The scenario that triggered the issue in this case occurred when the state was cross-examining Clark as to whether he carried a gun on the night of the incident. When Clark answered no, the state asked "[w]hat did you use to shoot the person that [sic] convicted you of manslaughter?" Both defense counsel and Clark's attorney objected, and the court sustained the objections.

The trial court then excused the jury and, in their absence, the state indicated that it intended to ask Clark about several instances in which he carried a weapon, threatened to use a weapon and did use a weapon, all for the purpose of impeaching Clark's credi-

bility. Tiernan apprised the court that he would advise Clark to refuse to answer any such questions on the ground that it might incriminate his client. Clark indicated to the court he would follow his attorney's advice.

The state then requested that the jury be brought back so that it could resume its cross-examination of Clark. The defendant objected to the state's request and the following colloquy occurred.

"[Assistant State's Attorney David Gold]: I intend to ask some questions and if Mr. Tiernan wants to on behalf of his client exercise his client's rights, I suppose that's what is going to happen. There is no reason then for any offer of proof and we can bring the jury back if that's the situation then, that's the decision.

"[Defense Counsel James Radda]: I don't think that is the way it should happen, judge. I don't think Mr. Gold is entitled to ask questions as they stand now. He knows Mr. Tiernan is going to tell his client not to answer on the grounds that he may incriminate himself. That's to Mr. Gold's advantage. I think Mr. Gold should be made now to make his inquiry outside the presence of the jury and let Mr. Tiernan and Mr. Clark decide whether there's a risk of incrimination."

The court ordered that the state conduct its voir dire of Clark outside the presence of the jury. After each question was asked, Tiernan advised Clark to avail himself of his fifth amendment privilege against self-incrimination. The court then ruled that it would allow the state to ask the questions of Clark in the presence of the jury, thereby compelling Clark to exercise his privilege before the jury. The defendant objected again:

"[James Radda]: I object to this same scenario taking place before the jury. It serves absolutely no purpose whatsoever for a question to be asked that now

the court knows is not going to be answered on the grounds of the fifth amendment.

"The Court: I will overrule the objection. I think the way the matter has arisen that it is proper cross-examination.

"[James Radda]: Exception please, judge."

The defendant clearly placed his objections on the record. He stated that it "serves . . . no purpose whatsoever," and that it was to the state's advantage. In a nutshell, the defendant objected on the ground that, since the questions would remain unanswered, they served no purpose except to prejudice the defendant before the jury. The defendant took an appropriate exception to the court's ruling. The state argues that the objection was not sufficient because the defendant did not incorporate the explicit language he now uses in his brief to describe the effects of the ruling. This argument is unavailing because the reasons stated by counsel for the defendant were succinct and adequately alerted the trial court to the basis of the defendant's objection. We conclude that the trial court and the state were fairly put on notice of the basis for the defendant's objections;[5] see *State* v. *Gonzales,* 186 Conn. 426, 433, 441 A.2d 852 (1982); and that the Appellate Court improperly concluded that the defendant's claim had been inadequately preserved.

---

[5] The state's reliance on *State* v. *Brice,* 186 Conn. 449, 452–58, 442 A.2d 906 (1982), is misplaced. In *Brice,* the defendant's objection to the constancy of accusation testimony was based solely on the ground of repetitiousness, but was overruled. Id., 455–56. On appeal, the defendant additionally claimed that the constancy of accusation testimony was inadmissible because it was incumbent upon the victim to testify first that she told the witness of the sexual assault, a ground totally unrelated to that relied upon in the trial court. In the present case, the defendant explicitly stated the grounds he now relies upon and went further by pointing out that requiring Clark to invoke his self-incrimination privilege in the presence of the jury was advantageous to the state.

## II

It is firmly established that " '[n]either [the state nor the defendant] has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him.' " *State* v. *Bryant,* 202 Conn. 676, 683, 523 A.2d 451 (1987), quoting *United States* v. *Lacouture,* 495 F.2d 1237, 1240 (5th Cir.), reh. denied, 503 F.2d 568 (5th Cir.), cert. denied, 419 U.S. 1053, 95 S. Ct. 631, 42 L. Ed. 2d 648 (1974); *State* v. *Daley,* 11 Conn. App. 185, 188, 526 A.2d 14 (1987). "The rule is grounded not only in the constitutional notion that guilt may not be inferred from the exercise of the Fifth Amendment privilege but also in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations. The jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination." *Bowles* v. *United States,* 439 F.2d 536, 541–42 (D.C. Cir. 1970), cert. denied, 401 U.S. 995, 91 S. Ct. 1240, 28 L. Ed. 2d 533 (1971).

Accordingly, we have held that a witness may not be called to the stand in the presence of the jury merely for the purpose of invoking his privilege against self-incrimination. *State* v. *Person,* 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied,       U.S.    , 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991); *State* v. *Bryant,* supra; *State* v. *Reddick,* 197 Conn. 115, 126–28, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). Such testimony is not relevant, and could

be prejudicial. We conclude, therefore, contrary to the determination of the Appellate Court, that the defendant's claim has merit.

## III

We note that the defendant's claim that the trial court impermissibly required Clark to invoke the fifth amendment privilege against self-incrimination in the presence of the jury does not present a constitutional issue in this case. *State* v. *Person,* supra, 659. It is a claim of evidentiary trial error. Id.; see *Namet* v. *United States,* 373 U.S. 179, 186, 83 S. Ct. 1151, 10 L. Ed. 2d 278 (1963). Thus, the claim is reviewable under the standard of harmless error applicable to nonconstitutional claims; *State* v. *Person,* supra, 660; and the defendant bears the burden of establishing that the trial court's erroneous ruling was harmful to him in that it probably affected the outcome of the trial. *State* v. *Burak,* 201 Conn. 517, 527, 518 A.2d 639 (1986); *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985).

In *Namet,* the United States Supreme Court identified two areas where prejudice can occur. "First, some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. This seems to have been one of the principal reasons underlying the finding of reversible error in *United States* v. *Maloney,* [262 F.2d 535 (2d Cir. 1959)]. In that case, the prosecution admitted knowing that two of its key witnesses could validly invoke the privilege against self-incrimination and intended to do so. The prosecutor nevertheless called and questioned them. The court also found that the Government's closing argument attempted to make use of the adverse inferences from their refusals to testify.

See also *United States* v. *Tucker*, 267 F.2d 212 [3d Cir. 1959]. A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant. This theory seems also to have been present to some extent in the *Maloney* decision, where the court noted that the challenged inferences were the only corroboration for dubious and interested testimony by the Government's chief witness. [*United States* v. *Maloney*, supra,] 536–37." *Namet* v. *United States*, supra, 186–87; *State* v. *Reddick*, supra, 126.

In the present case, in order to determine whether the ruling of the trial court was prejudicial, we must consider the invocation of the privilege in response to the specific questions in the context of the circumstances of the case. Clark's testimony and credibility were critical because he was the only eyewitness; he was a friend of the victim and had accompanied him to the area where the incident occurred; and he was the only defense witness who could support the claim that the defendant did not have or use a gun at the time of the incident, a necessary element of the crime charged.[6] Clark's credibility was impaired because the jury knew that at the time of his testimony he was incarcerated for the crime of manslaughter and that he had a previous conviction for carrying a dangerous weapon. The defendant, already having had his witness come to him saddled with heavy baggage, was also required to contend with those inferences that the jury undoubtably drew as a result of Clark's "taking the fifth."

This case fits the mold of at least the second area of prejudice outlined in *Namet*, i.e., "inferences from

---

[6] See footnote 2, supra.

a witness' refusal to answer . . . [which] unfairly prejudiced the defendant." *Namet* v. *United States,* supra, 187. Here, the state made a conscious and flagrant attempt to induce the jury to draw adverse inferences. It was clear, from the voir dire, that the state knew Clark would invoke the privilege for these specific questions. The state pursued the questions in the presence of the jury, thus allowing the jurors to draw highly prejudicial inferences from the witness' invocation of his "fifth"; there could be no other purpose. It also added critical weight to the state's position that the defendant used a gun in his attempt to commit robbery. By casting another shadow on Clark's credibility, the only witness to support the claim that the defendant had no weapon, it unfairly prejudiced the defendant.

Finally, the full impact of the prejudice was underscored by the state's summation:

"[Assistant State's Attorney David Gold]: Now, Richard Clark. I am going to jump ahead for a minute if I can. Richard Clark comes in yesterday. You know what amazed me is he sat up there and he answered the questions and he told you an entire story and then with that same look, the same composure that he answered all of the questions, he told you the story that this was Mr. Davis's gun.

"The same way he looked at you and told you that it was Mr. Davis's gun is the same way he looked at you and told you he never carries a gun, he never uses a gun. This is from someone who has been convicted of the crime of manslaughter.

"And when questions came to Mr. Clark's attention that he chose not to answer, he exercised his fifth amendment—

"[Defense Attorney James Radda]: I object to that, judge. I'm sorry.

"The Court: Overrule the objection.

"[David Gold]: I'm just—I am not suggesting he doesn't have a constitutional right to exercise his fifth amendment. He did. But it was interesting, I thought, he looked the same way and said no, I don't carry a gun, I don't use a gun and then he did, as is his right, exercised the fifth amendment with that same composure."

The state further argued before the jury: "But when Richard Clark comes in here and he looked you dead in the eye and he says to you I don't carry a gun, I don't use a gun dead in the eye and then you hear what you hear, you have to shake your head and say what's going on. And then when he takes, as is his right, he takes his fifth amendment, we know it is his right to do it, but I think that you can assess his credibility by considering that." These statements make it clear that the state consciously attempted to use Clark's invocation of his privilege against self-incrimination to entice the jury to draw an inference that was improper and prejudicial.[7]

---

[7] The Appellate Court relied upon its holding in *State* v. *Person*, 20 Conn. App. 115, 118–23, 564 A.2d 626 (1989), aff'd, 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied,      U.S.     , 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991), to support its conclusion that the defendant's claim was without merit. *State* v. *Dennison*, 24 Conn. App. 27, 31 n.1, 585 A.2d 1240 (1991). *Person* is inapposite for several reasons. First, unlike the instant case, the witness in *Person*, after he initially invoked his fifth amendment privilege against self-incrimination regarding his use of marihuana, subsequently waived his privilege and testified that he never smoked marihuana. The Appellate Court found that "[e]ven if the possibility that the jury drew an impermissible inference from the fact of [the witness'] assertion of the privilege could be seen as being of critical weight, any prejudice to the defendant caused thereby was defused by [the witness'] subsequent testimony denying the use of marihuana." *State* v. *Person*, supra, 122. Second, on certification, we found that the witness' testimony in *Person* "was remote from the central issue of the case." *State* v. *Person*, 215 Conn. 653, 663, 577 A.2d 1036 (1990), cert. denied,      U.S.     , 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991). In the instant case, if the jury had believed Clark, it is clear that the state could not have met its burden of proving the necessary element that the

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case for a new trial.

In this opinion the other justices concurred.

defendant committed the robbery with a deadly weapon. Third, in *Person,* the witness "was not a key witness." *State* v. *Person,* supra, 215 Conn. 662. Here, Clark was the sole eyewitness and the only person capable of supporting the defendant's version of the events.

The present case must also be distinguished from those in which such episodes were "no more than minor lapses through a long trial." *United States* v. *Hiss,* 185 F.2d 822, 832 (2d Cir. 1950). In such cases, curative instructions to the jury are usually sufficient to cure the impropriety. *United States* v. *Amadio,* 215 F.2d 605, 613–14 (7th Cir.), rev'd on other grounds, 348 U.S. 892, 75 S. Ct. 218, 99 L. Ed. 701 (1954); *Weinbaum* v. *United States,* 184 F.2d 330 (9th Cir. 1950).