STATE OF CONNECTICUT *v.* BRUCE IVERSON
(AC 16029)

Landau, Spear and Dupont, Js.

---

Argued December 15, 1997—officially released March 17, 1998

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia Serafini*, assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Bruce Iverson, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell, in violation of General Statutes § 21a-277 (a).[1]

---

[1] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and impris-

On appeal, the defendant claims that the trial court improperly (1) ruled that he could not ask his own witness a question in the presence of the jury, knowing that the witness intended to invoke his privilege against self-incrimination in response to that question, and (2) denied his "motion to reopen the evidence and, in the alternative, for a mistrial." We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 13, 1994, Nicholas Dematteis and Tracy Canale, detectives of the Waterbury police department, observed the defendant in the alley between 12-16 Bronson Street and 18 Bronson Street placing what appeared to be a brown paper bag into a hole at the base of the steps at 18 Bronson Street. As the detectives approached him, they observed the defendant drop two small plastic bags containing white chips. Dematteis retrieved both bags and, on the basis of his training and experience, concluded that they contained crack cocaine. The defendant was arrested, searched, handcuffed and placed in the back of a police vehicle. Dematteis then pulled out the brown paper bag from the hole in the steps and found twenty small plastic bags similar in size and color to the two bags that the defendant had dropped earlier.

I

The defendant first argues that the trial court improperly refused to permit him to ask his witness, Quentin Myers, before the jury, a question to which the defendant knew the witness intended to invoke his privilege against self-incrimination.[2] We do not agree.

oned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] The fifth amendment to the United States constitution provides in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

The gravamen of the defendant's defense at trial was that the crack cocaine found by the detectives was not his and that they had lied in their testimony about observing him (1) put the brown paper bag in the hole in the bottom of the steps and (2) drop the two plastic bags to the ground. To support this defense, the defendant first called another witness, Horace Peterson, who testified, inter alia, that drugs were bought and sold on Bronson Street every day, that drugs were often found in a churchyard directly across the street from 18 Bronson Street, that on the morning of the defendant's arrest, a boy, about fifteen or sixteen years old, who went by the name Quentin, was seen selling drugs to someone who had pulled up in a car, that someone had yelled "TNT,"[3] and that Quentin threw something that looked white and "might have been a plastic bag" into some bushes and ran into 18 Bronson Street.

The defendant then called Myers as a witness and made an offer of proof of Myers' testimony outside the presence of the jury. Myers' counsel[4] initially informed the trial court that Myers did not want to testify. The defendant argued that Myers should be required to testify, at least during the voir dire examination, to determine if he would assert his fifth amendment rights in response to individual questions. The trial court agreed with the defendant, saying it would rely on the guardian ad litem and counsel to protect Myers' rights.

During voir dire, Myers testified as to his age, residence and certain events that occurred on October 13, 1994. On cross-examination by the state, Myers denied throwing anything into the bushes or onto the sidewalk, yelling "TNT" and stuffing a brown paper bag into a hole in the steps. The following colloquy then took place:

[3] TNT refers to the Waterbury police tactical narcotics team.

[4] The trial court appointed a guardian ad litem and legal counsel for Myers, who was fifteen years old at the time of trial.

"Q. Mr. Myers, on October 13, 1994, were you selling drugs on Bronson Street?

"A. Was I selling drugs? Yes.

"Q. You were selling drugs—"

At that point, Myers' court-appointed attorney objected and moved to strike the answer. The trial court granted the motion and permitted Myers to consult with his attorney and guardian ad litem. After the conference, the trial court questioned Myers:

"The Court: Now, what is your mind? Is your mind that you wish to take advantage of your privileges?

"Myers: I'm taking the fifth.

"The Court: You wish to take the fifth amendment?

"Myers: Yes."

Because Myers invoked his privilege against self-incrimination during voir dire as to whether he sold drugs on Bronson Street on October 13, 1994, the state argued that he should not be permitted to testify at all for the defense as the state would not be able to cross-examine him effectively. The defendant argued that Myers should be required to invoke his privilege to the question in front of the jury. In rejecting both arguments, the trial court ruled that Myers would be permitted to testify in response to all questions he had been asked during voir dire except "he would not be asked by either party before the jury a question concerning his selling drugs on the day in question since the fifteen year old witness has invoked properly his privilege not to incriminate himself in that regard."

Myers, testifying before the jury, denied throwing anything into the bushes or onto the sidewalk, denied yelling "TNT," denied stuffing a brown paper bag into

a hole in the steps and iterated that he did not throw anything onto the ground on October 13, 1994.

It is widely held that "it is improper to permit a witness to claim a testimonial privilege in front of the jury where the witness's intention not to testify is known beforehand." *United States* v. *Chapman*, 866 F.2d 1326, 1333 (11th Cir.), cert. denied, 493 U.S. 932, 110 S. Ct. 321, 107 L. Ed. 2d 312 (1989); see also *United States* v. *Doddington*, 822 F.2d 818, 822 (8th Cir. 1987); *United States* v. *Crawford*, 707 F.2d 447, 449 (10th Cir. 1983); *United States* v. *Lyons*, 703 F.2d 815, 818 (5th Cir. 1983); *United States* v. *Fricke*, 684 F.2d 1126, 1131 n.7 (5th Cir. 1982), cert. denied, 460 U.S. 1011, 103 S. Ct. 1250, 75 L. Ed. 2d 480 (1983); *Commonwealth* v. *Gagnon*, 408 Mass. 185, 196, 557 N.E.2d 728 (1990); *People* v. *Dyer*, 425 Mich. 572, 576, 390 N.W.2d 645 (1986); *People* v. *Thomas*, 51 N.Y.2d 466, 472, 434 N.Y.S.2d 941, 415 N.E.2d 931 (1980); *State* v. *Harris*, 839 S.W.2d 54, 72 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S. Ct. 1368, 122 L. Ed. 2d 746 (1993).

Our appellate courts follow that general rule. Our Supreme Court has stated: "It is firmly established that [n]either [the state nor the defendant] has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him. *State* v. *Bryant*, 202 Conn. 676, 683, 523 A.2d 451 (1987), quoting *United States* v. *Lacouture*, 495 F.2d 1237, 1240, reh. denied, 503 F.2d 568 (5th Cir.), cert. denied, 419 U.S. 1053, 95 S. Ct. 631, 42 L. Ed. 2d 648 (1974); *State* v. *Daley*, 11 Conn. App. 185, 188, 526 A.2d 14 (1987). The rule is grounded not only in the constitutional notion that guilt may not be inferred from the exercise of the Fifth Amendment privilege but also in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations. The jury may

think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination. *Bowles* v. *United States*, 439 F.2d 536, 541–42 (D.C. Cir. 1970), cert. denied, 401 U.S. 995, 91 S. Ct. 1240, 28 L. Ed. 2d 533 (1971).

"Accordingly, we have held that a witness may not be called to the stand in the presence of the jury merely for the purpose of invoking his privilege against self-incrimination. *State* v. *Person*, 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991); *State* v. *Bryant*, supra, [202 Conn. 683]; *State* v. *Reddick*, 197 Conn. 115, 126-28, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). Such testimony is not relevant, and could be prejudicial." (Internal quotation marks omitted.) *State* v. *Dennison*, 220 Conn. 652, 660–61, 600 A.2d 1343 (1991).

The defendant relies on dicta in *State* v. *Bryant*, supra, 202 Conn. 686,[5] to assert that his case should fall within an exception to the well established general rule. The argument is without merit. The *Bryant* language, as obiter dicta, is not binding precedent; even if it were, it is not instructive.

We first note that an affirmative answer to the question would not have been exculpatory to the defendant. The fact that the witness may have sold drugs on Bronson Street on the day in question does not mean that the defendant did not stuff a paper bag containing twenty

---

[5] *"While we can imagine a case in which a defendant's constitutional right to call witnesses on his behalf might arguably require that a witness who refuses to testify be called,* this is not such a case." (Emphasis added.) *State* v. *Bryant*, supra, 202 Conn. 686.

plastic bags of crack cocaine into a hole at the base of the steps at 18 Bronson Street or that the defendant did not drop two additional bags of crack cocaine to the ground, as observed by the detectives.

Furthermore, permitting Myers to invoke his privilege against self-incrimination in front of the jury could result only in speculation as the jury attempted to draw inferences from the unanswered question. See *State* v. *Dennison*, supra, 220 Conn. 660–61. The defendant hoped to gain some benefit from the witness' invocation of the privilege in the presence of the jury. This is impermissible.

## II

In his second claim, the defendant asserts that the trial court improperly denied his motion to open the evidence[6] and to allow the jury to hear Myers testify that he was selling drugs on October 13, 1994. The defendant claims that Myers waived his right to invoke the fifth amendment as to the question of his selling drugs when he answered the earlier questions. The defendant asserts that because Myers denied throwing drugs or anything else into the alley, he should have been able to impeach Myers' credibility with the fact that Myers was selling drugs on that date. Because he was denied the opportunity to impeach Myers' credibility, the defendant claims that he was denied a fair trial. We disagree.

In response to the defendant's claim, the state argues that Myers, a juvenile not versed in the law or court procedure, merely blurted out his answer and, therefore, did not knowingly and intelligently waive his right.

---

[6] The motion filed by the defendant was titled "Motion to Reopen Evidence and Allow Answer into Evidence and in the Alternative for a Mistrial." The trial court denied the motion to open evidence. Prior to sentencing, the defendant filed another motion for a mistrial, which the trial court, confirming its prior decision, also denied.

The state further claims that Myers' attorney immediately objected to the question and requested the answer to be stricken. Immediately after he was given the opportunity to consult his attorney and guardian ad litem, Myers invoked his privilege against self-incrimination under the provisions of the fifth amendment in response to the trial court's inquiry.

The trial court ruled on the defendant's alternative motion from the bench, saying that it was satisfied from its own observations of Myers during the voir dire hearing that "at the time he blurted out that response he was confused, upset emotionally and did not understand his right to invoke his own privilege to remain silent. As the transcript of the voir dire hearing reveals . . . he thought he had to answer truthfully and did not understand that he could invoke his privilege to remain silent. . . . We do not find a testimonial waiver."[7]

"The test for determining whether a court may infer a testimonial waiver of the privilege against self-incrimination is set forth in *Klein* v. *Harris*, 667 F.2d 274, 287 (2d Cir. 1981). A testimonial waiver is not to be inferred lightly. *Smith* v. *United States*, 337 U.S. 137, 150, 69 S. Ct. 1000, 93 L. Ed. 1264 (1949); *State* v. *Altrui*, [188 Conn. 161,] 169 [448 A.2d 837 (1982)]. It should be inferred only under the most compelling circumstances. *Klein* v. *Harris*, supra, 288; *State* v. *Altrui*, supra [169]. The two-prong test set forth in *Klein* v. *Harris*, supra, 287, states: '[A] court should only infer a waiver of the fifth amendment's privilege against self-incrimination from a witness' prior statements if (1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had

---

[7] The trial court also stated, "We conclude that there is no compelling reason to permit Bruce Iverson to reopen the trial to attempt to present inadmissible evidence which came to his attention during the trial. *State* v. *Carter*, 228 Conn. [412, 636 A.2d 821 (1994)]."

reason to know that his prior statements would be interpreted as a waiver of the [privilege] . . . .' The second prong of the *Klein* test requires a two-fold analysis.

"The requisite 'reason to know' that a waiver might be inferred should be found *only if* the witness' *prior* statements were (a) testimonial, meaning that they were voluntarily made under oath in the context of the same judicial proceeding, *and* (b) incriminating, meaning they did not merely deal with matters collateral to the events surrounding the commission of the crime, but directly inculpated the witness on the charges at issue. *Klein* v. *Harris*, supra, [667 F.2d] 288. Both prongs of this test must be satisfied in order for the court to be able to infer a testimonial waiver." (Emphasis in original.) *DeMartin* v. *Manson*, 2 Conn. App. 496, 503–504, 480 A. 2d 578, cert. denied, 194 Conn. 807, 483 A. 2d 275 (1984).

The short answer to the defendant's claim is that Myers' responses to the questions preceding the question about selling drugs were not incriminating. They did not inculpate Myers on the charges at issue, i.e., the defendant's possession of a narcotic substance with an intent to sell. Nor did the answers cause confusion of the issue before the jury. Finally, Myers had no reason to know that the responses would be interpreted as a waiver of his privilege against self-incrimination.

The trial court found that the "fifteen year old confused, emotionally upset youngster did not understand his privilege to remain silent" until he had conferred with his court-appointed lawyer and guardian ad litem. To waive his privilege against self-incrimination, a witness must have some basic understanding of the fifth amendment privilege. If he had no understanding of the privilege, Myers' answer could not be freely and voluntarily given. See *Klein* v. *Harris*, supra, 667 F.2d

288; *State* v. *Altrui,* supra, 188 Conn. 170; *DeMartin* v. *Manson,* supra, 2 Conn. App. 503–504; see also *United States* v. *Silverstein,* 732 F.2d 1338, 1345 (7th Cir. 1984), cert. denied, 469 U.S. 1111, 105 S.Ct. 792, 83 L. Ed. 2d 785 (1985).[8] Thus, the trial court was correct in not inferring a testimonial waiver from Myers' nonincriminating responses.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The defendant also argues that even if the response blurted out by Myers is not deemed to be a waiver of his privilege against self-incrimination, the response was nevertheless admissible under the prior testimony exception to the hearsay rule. When the defendant argued his motion in the trial court, he relied solely on the "waiver issue" and failed to draw the court's attention to any hearsay exception claim. We will not review this unpreserved, improperly raised evidentiary claim on appeal. See *State* v. *Goodrum,* 39 Conn. App. 526, 543, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995).