******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TYRONE ROBINSON *v.* COMMISSIONER
OF CORRECTION
(AC 43041)

Alvord, Alexander and Vertefeuille, Js.

*Syllabus*

The petitioner, who had been convicted of murder and criminal possession
of a firearm, sought a second writ of habeas corpus, claiming, inter alia,
that the state violated his right to due process, pursuant to *Brady* v.
*Maryland* (373 U.S. 83), when it failed to disclose to him at his criminal
trial certain information concerning an alleged bank fraud scheme
involving a third party, H, and the victim. H had given the police a sworn
statement asserting that an individual he knew as Lenny had asked him
to open a bank account and to provide him with an account number.
H alleged that Lenny would then deposit money into the account after
which H could withdraw a certain amount. H's statement to the police
and certain bank records were admitted into evidence in the petitioner's
second habeas trial, at which H invoked his fifth amendment privilege
against self-incrimination and refused to testify. The petitioner, who
had admitted to several individuals that he shot the victim, claimed that
H's statement and the bank records constituted exculpatory information
and viable evidence that should have been provided to him to support
a third-party culpability defense. The habeas court rendered judgment
denying the habeas petition, concluding, inter alia, that there was no
reasonable probability that H's statement or the bank records would
have been relevant or admissible third-party culpability evidence at the
criminal trial. On the granting of certification, the petitioner appealed
to this court. *Held* that the habeas court properly denied the petition
for a writ of habeas corpus, as the proffered evidence, which did not
establish a direct connection to the victim's murder, was not material
and, thus, the state's failure to disclose it did not constitute a *Brady*
violation: the possibility that H may have had a motive to kill the victim
to withdraw the remaining funds from the bank account was insufficient
to establish a direct connection to the crime, as the evidence, at best,
created a mere suspicion of a connection between H and the victim,
and, even if it were assumed that Lenny and the victim were the same
person, the documents established only that H and the victim knew
each other for a short time and were engaged in a fraud scheme, which
did not rise to the level of a legitimate third-party culpability defense,
particularly in light of the petitioner's multiple confessions; moreover,
as a *Brady* claim is resolved by determining whether the suppressed
evidence itself is material, the proffered evidence did not create a reason-
able probability of a different result at the petitioner's criminal trial on
the basis of a mere possibility that it could have led to the discovery
of further evidence, and, contrary to the petitioner's assertion, the habeas
court did not improperly decline to consider the effect of the proffered
evidence in conjunction with an adverse inference from H's invocation
of his privilege against self-incrimination, as the finder of fact would
be prohibited from drawing any adverse inferences from H's decision
to invoke the privilege, which could not have affected the petitioner's
criminal trial without constituting error; furthermore, because the peti-
tioner's claim of ineffective assistance on the part of his prior habeas
counsel was premised on that counsel's failure to advance the *Brady*
claim in the first habeas proceeding, the habeas court properly denied
the petition as to that claim.

Argued March 2—officially released May 11, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought
to the Superior Court in the judicial district of Tolland
and tried to the court, *Newson, J.*; judgment denying
the petition, from which the petitioner, on the granting

of certification, appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Tyrone Robinson, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying both counts of his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) determined that the state did not violate his rights to due process and a fair trial by failing to disclose material, exculpatory evidence at his criminal trial and (2) denied his claim of ineffective assistance by the habeas counsel who represented him with respect to a prior habeas petition. We affirm the judgment of the habeas court.

The following recitation of facts was set forth by this court in the petitioner's direct appeal from his conviction. "At the time that the victim, Leonard Lindsay, was shot, the [petitioner] was living with his girlfriend, Lashonda Barno. On occasion, the [petitioner] exhibited jealousy and controlling behavior toward Barno, particularly with regard to the victim.

"Sometime in the spring of 2001, the victim, who had known Barno for fifteen years because they had gone to school together, manhandled her at a dance club. When the [petitioner] learned about this incident, he became upset and confronted the victim. Following the incident at the dance club, rumors of a sexual relationship between Barno and the victim began to circulate in the neighborhood.

"In the early morning of October 6, 2002, the victim drove into a gasoline station on Albany Avenue in Hartford and parked his car so that the driver's side window faced the street. Following a report of gunshots fired at the station, the police found the victim in his car with a gunshot wound to the head and a bullet hole in the driver's side window of the car. The victim was transported to a hospital, where he died later that day. The [petitioner] was not immediately identified as having committed the crime.

"At trial, the state presented evidence that the [petitioner] had admitted to four individuals that he had killed the victim. Immediately after having shot the victim, he confessed the killing to Barno and to her cousin. In September, 2004, he similarly confessed to Eric Smith, a longtime friend, who so informed the police in 2005, when Smith was incarcerated. In April, 2008, the [petitioner] confessed to Larry Raifsnider, a fellow inmate in a federal prison in Pennsylvania. Although the [petitioner's] earlier confessions were consistent with his claim, at trial, that he had intended only to frighten the victim, his confession to Raifsnider described a planned killing." *State* v. *Robinson*, 125 Conn. App. 484, 486–87, 8 A.3d 1120 (2010), cert. denied, 300 Conn. 911, 12 A.3d 1006 (2011).

The state charged the petitioner with murder in viola-

tion of General Statutes § 53a-54a and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). Id., 486. After a jury trial on the murder charge, the petitioner was found guilty. The weapons charge was thereafter tried to the court, which found him guilty and sentenced him on both counts to a total effective term of fifty years of incarceration. Id. This court affirmed the judgment of conviction on appeal. Id., 489.

The petitioner filed his first petition for a writ of habeas corpus on September 9, 2008, which subsequently was amended by his assigned counsel, Attorney Robert Rimmer, on May 8, 2012. The petitioner alleged three counts of ineffective assistance of trial counsel, arguing that his trial counsel was ineffective during both the trial and the sentencing phase. The court denied the first habeas petition. This court subsequently dismissed the appeal. *Robinson* v. *Commissioner of Correction*, 167 Conn. App. 809, 144 A.3d 493, cert. denied, 323 Conn. 925, 149 A.3d 982 (2016).

The petitioner filed his second petition for a writ of habeas corpus, which is the subject of this appeal, on November 30, 2015, which was then amended on June 6, 2018. In the first count, the petitioner alleged a violation of his right to due process at his criminal trial, as guaranteed by *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963),[1] because the state had failed to disclose all relevant details surrounding an alleged bank fraud scheme between the victim and a third party, Robert L. Hudson, Jr. The second count alleged that Attorney Rimmer rendered ineffective assistance at the first habeas trial by failing to investigate and to present the *Brady* claim that the petitioner now advances.

A trial was held on the petitioner's second habeas petition in December, 2018. The petitioner entered into evidence a sworn statement that Hudson had provided to the Bloomfield Police Department in October, 2002, ten days after the victim was found dead. Hudson explained in the statement that he worked as a bouncer at a bar in Hartford and had become acquainted with a man named "Lenny," who drove a black BMW or Mercedes Benz. Lenny asked Hudson to open a bank account for him and to provide him with an account number. He explained that he would then deposit $23,000 into the account and Hudson could withdraw $10,000. Lenny also told Hudson that, if the plan worked, he could make more money in the future. A couple of days later, Hudson heard that a man in a black BMW or Mercedes Benz had been murdered at a gas station in Hartford and wondered if it was Lenny who had been shot. Later, while attempting to withdraw more money from the account, Hudson was apprehended by police officers. Along with Hudson's statement, the petitioner also entered into evidence bank records from Fleet

National Bank, which had been acquired through a police investigation on October 18, 2002, showing the relevant deposits, withdrawals, and fraudulent checks. This information eventually was acquired by the Hartford Police Department.[2] Hudson was called to testify at the habeas trial, but after consultation with an attorney from the Office of the Public Defender, he invoked his fifth amendment privilege against self-incrimination in response to every question except to state his name and address.

The petitioner argued that Hudson's statement to the police and the bank records should have been provided to the petitioner's trial attorneys as exculpatory information and viable evidence to support a third-party culpability defense. The petitioner claimed that the failure to disclose this information violated his due process rights under *Brady*. The court denied the claim, finding no reasonable probability that this information would have been relevant or admissible third-party culpability evidence. The court denied the second count of the habeas petition because the ineffective assistance of habeas counsel claim was premised on Attorney Rimmer's failure to investigate and to present the *Brady* claim. The court then granted the petitioner's petition for certification to appeal, and this appeal followed.

The petitioner claims that the court improperly determined that the evidence was not material, stressing that the documents could have led to the discovery of further evidence and that the court should have drawn an adverse inference from Hudson's invocation of his fifth amendment privilege. In response, the respondent, the Commissioner of Correction, argues that the habeas court properly determined that the petitioner failed to establish that the documents constituted material exculpatory evidence. We agree with the respondent.

We first set forth the applicable standard of review. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . [T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citation omitted; internal quotation marks omitted.) *Godfrey* v. *Commissioner of Correction*, 202 Conn. App. 684, 693,     A.3d     (2021). Moreover, "[w]hether the petitioner was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." *Walker* v. *Commissioner of Correction*, 103 Conn. App. 485, 491, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007).

"In [*Brady* v. *Maryland*, supra, 373 U.S. 83] . . . the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused

. . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the [petitioner] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [petitioner], and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *Floyd* v. *Commissioner of Correction*, 99 Conn. App. 526, 533–34, 914 A.2d 1049, cert. denied, 282 Conn. 905, 920 A.2d 308 (2007). All three components must be established in order to warrant a new trial. See *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 262, 112 A.3d 1 (2015).

The habeas court in the present case addressed only the third prong of the *Brady* test, finding that the proffered evidence was not material. "The test for materiality is well established. The United States Supreme Court . . . in *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), [held] that undisclosed exculpatory evidence is material, and that constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . [A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." (Internal quotation marks omitted.) *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 157, 10 A.3d 578, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011). "[A] trial court's determination as to materiality under *Brady* presents a mixed question of law and fact subject to plenary review, with the underlying historical facts subject to review for clear error." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, supra, 316 Conn. 264.

In order for evidence related to a third-party culpability defense to be material, it would first have to meet the relevancy requirements for such a defense. "The admissibility of evidence of [third-party] culpability is governed by the rules relating to relevancy. . . . Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Accordingly . . . the proffered evidence [must] establish a *direct connection* to a third party, rather than raise merely a bare suspicion regarding a third party . . . . Such evidence is relevant, exculpatory evidence, rather than merely tenuous evidence of [third-party] culpability [introduced by a defendant] in an attempt to divert from himself the evidence of guilt. . . . In other words, evidence that establishes a *direct connection* between

a third party and the charged offense is relevant to the central question before the jury, namely, whether a reasonable doubt exists as to whether the defendant committed the offense. Evidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination. A trial court's decision, therefore, that [third-party] culpability evidence proffered by the defendant is admissible, necessarily entails a determination that the proffered evidence is relevant to the jury's determination of whether a reasonable doubt exists as to the defendant's guilt." (Emphasis added; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 330 Conn. 520, 564–65, 198 A.3d 52 (2019).

The petitioner has failed to establish a direct connection between the proffered evidence and the victim's murder. As the respondent points out, the petitioner failed to establish that the individual known as Lenny, with whom Hudson had entered into the check-cashing scheme, was the murder victim, Leonard Lindsay. Even if we assume that the Lenny in the sworn statement and the murder victim are the same person, as the habeas court did, the documents establish only that Hudson and the victim knew each other for a short time and were engaged in a fraud scheme together. This evidence does not rise to the level of a legitimate third-party culpability defense, particularly in light of the petitioner's multiple detailed confessions.[3] The possibility that Hudson may have had a motive to kill the victim to withdraw the remaining funds from the bank account, is insufficient to establish a direct connection to the crime. See *State* v. *Hedge*, 297 Conn. 621, 634–35, 1 A.3d 1051 (2010) (explaining that, without evidence that directly connects third party to crime, "[i]t is not enough to show that another had the motive to commit the crime" (internal quotation marks omitted)). The proffered evidence, at best, creates a mere suspicion of a connection between Hudson and the victim and is, therefore, not material.

As to the petitioner's argument that the documents could have led to the discovery of further evidence, a *Brady* claim is resolved by determining whether the suppressed evidence *itself* is material. *Lapointe* v. *Commissioner of Correction*, supra, 316 Conn. 263 ("materiality is established if the *withheld evidence* is of sufficient import or significance in relation to the original trial evidence" (emphasis added)). We cannot conclude that these documents create a reasonable probability of a different result at trial on the basis of a mere possibility that they could have led to the discovery of further evidence.[4]

Last, the petitioner argues that the habeas court should have considered the effect of the evidence in conjunction with an adverse inference from Hudson's

invocation of the privilege against self-incrimination. As the respondent correctly points out, however, in a criminal trial "a witness may not be called to the [witness] stand in the presence of the jury merely for the purpose of invoking his privilege against self-incrimination." *State* v. *Dennison*, 220 Conn. 652, 660, 600 A.2d 1343 (1991). Further, if Hudson did invoke the privilege, the finder of fact would be prohibited from drawing any adverse inferences from this decision. See id., 660–62; *State* v. *Bryant*, 202 Conn. 676, 683–84, 523 A.2d 451 (1987). Accordingly, if Hudson's invocation of the privilege could not have affected the petitioner's criminal trial without constituting error, it was not improper for the habeas court to decline to consider Hudson's invocation of the privilege.

In light of the applicable standard, and after a careful review of the record, we conclude that the habeas court properly determined that the state's failure to disclose evidence of the bank fraud scheme did not undermine confidence in the jury's verdict. This evidence, therefore, was not material, and the state's failure to disclose it did not constitute a *Brady* violation.

Because the petitioner's claim of ineffective assistance on the part of his prior habeas counsel is premised on Attorney Rimmer's failure to advance the *Brady* claim, we also conclude that the court properly denied the habeas petition with respect to this claim.[5]

The judgment is affirmed.

[1] "In [*Brady* v. *Maryland*, supra, 373 U.S. 83], the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process [when] the evidence is material either [as] to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 262, 112 A.3d 1 (2015).

[2] The habeas court explained that it was not contested that the "information, which was originally gathered by the Bloomfield Police Department, was turned over to the Hartford Police Department and was contained in the file related to the murder of the victim. What is not clear, nor established by any evidence before this court, is exactly when it was delivered to the Hartford police, or why."

[3] "Whether a defendant has sufficiently established a direct connection between a third party and the crime with which the defendant has been charged is necessarily a fact intensive inquiry. In other cases, this court has found that proof of a third party's physical presence at a crime scene, combined with evidence indicating that the third party would have had the opportunity to commit the crime with which the defendant has been charged, can be a sufficiently direct connection for purposes of [third-party] culpability. . . . Similarly, this court has found the direct connection threshold satisfied for purposes of [third-party] culpability when physical evidence links a third party to a crime scene and there is a lack of similar physical evidence linking the charged defendant to the scene. . . . Finally, this court has found that statements by a victim that implicate the purported third party, combined with a lack of physical evidence linking the defendant to the crime with which he or she has been charged, can sufficiently establish a direct connection for [third-party] culpability purposes." (Citations omitted.) *State* v. *Baltas*, 311 Conn. 786, 811–12, 91 A.3d 384 (2014). For example, in *Baltas*, our Supreme Court found that the defendant was not entitled to a jury instruction on a third-party culpability defense even when it was undisputed that the third party was physically present at the crime scene and the third party's clothing was stained with a victim's blood. Id., 812.

[4] The petitioner argues that our Supreme Court has "explicitly rejected such a restrictive approach to *Brady* violations," citing to language from

*Lapointe* v. *Commissioner of Correction*, supra, 316 Conn. 262 n.34. The language cited, however, refers not to materiality but to the favorability prong of *Brady* and clarifies that evidence does not have to be admissible in its present form to be deemed *favorable* and subject to mandatory disclosure. Id. The state must *disclose* "material information potentially leading to admissible evidence favorable to the defense"; (internal quotation marks omitted) id.; but that does not necessarily mean that information that could potentially lead to favorable evidence is material under *Brady*.

[5] "In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 430, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011). Because the proffered evidence is not material, the habeas court correctly concluded that the petitioner did not suffer prejudice from his prior habeas counsel's failure to investigate and present the allegedly suppressed documents.